## Sidney Bradley, d/b/a Pioneer Restaurant v. Donald Buck and Charles Buck, d/b/a Buck Heating Oils

[306 A.2d 98]

No. 48-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

*Thomas F. Koch, Esq.,* of Free & Bernasconi, Barre, for Plaintiff.

*Burgess & Kilmurry,* Montpelier, for Defendants.

**Shangraw, C.J.** This is an action alleging negligence in the performance of a contract returnable before the District Court

of Vermont, Unit No. 5, Washington Circuit. The case was tried by jury on February 8, 1972, resulting in a verdict for the plaintiff of $3,000.00. Judgment was entered thereon and defendants have appealed therefrom.

In March of 1968, and for a period prior thereto, the plaintiff, Sidney Bradley, was the owner and operator of the Pioneer Restaurant in the Town of Northfield, Vermont. Plaintiff lived in a trailer to the rear of the restaurant building. The fuel supply for the premises consisted of two fifty-five gallon tanks.

On March 8, 1968, at the request of the plaintiff, the defendants installed a new 275 gallon fuel oil tank for the purpose of servicing plaintiff's property. On March 9, 1968, it was discovered that one leg supporting the tank had broken through a corrugated mat upon which it was placed. This caused the tank to tip, and an estimated 20–25 gallons of oil was discharged on the ground.

Prior to the oil spillage, plaintiff's water supply consisted of twin dug wells to the rear of his restaurant. Plaintiff testified that his water system was adequate for his restaurant and to his knowledge the wells never ran dry.

Approximately four days after the fuel spillage, plaintiff discovered petroleum contamination in his water supply. He immediately closed the restaurant and had to keep it closed for three days at an estimated loss of $450.00 in profits. Attempts by pumping water from the wells over a period of two weeks or more failed to purify the water supply.

Subsequent to the contamination plaintiff arranged for a temporary water supply from another spring two hundred feet from the restaurant. This could only be used for toilets and dishwashing. Drinking water was carried from a nearby spring by a boy hired by the plaintiff at a cost of $90.00. There was evidence allowing the jury to conclude that it was not economically feasible to convert the temporary spring into a permanent water supply.

In the end, plaintiff drilled an artesian well, installed a pump, tank and pipe system at a total cost of $1,751.90. In support of plaintiff's damages, the foregoing items of $450.00, $90.00, and $1,751.90 were introduced in evidence by the plaintiff without objections by the defendants. This is the limit of plaintiff's proof of damage.

The court, in its charge to the jury, submitted the issue as to whether or not the damages sustained by the plaintiff resulted from the alleged negligent installation of the 275 gallon tank by the defendants. In its comments on the issue of damages, the court generally referred to the cost of installing a new water supply, loss of profits and incidental expenses. No exception was taken by any of the parties to the charge. The jury rendered a verdict of $3,000.00 and judgment was immediately entered thereon.

On appeal the defendants do not disaffirm their negligence. The issues presented only related to damages awarded by the jury.

Following the conclusion of plaintiff's case, the defendant offered to show the price at which plaintiff sold his restaurant some three and one-half years after the events in question. To this end appears the following statement made by defendants' attorney.

> "The fact is the damage increased the value of his property. The fact is he put in a new and more advanced system with quality and quantity of water far superior to the cisterns and this increased the value of his property."

The foregoing was the tenor of defendants' offer of proof made to the trial court. Plaintiff objected to the evidence, and it was excluded by the court.

On appeal it is urged by the defendant that the proper measure of damage should have been the difference in value of the premises immediately before and immediately after the injury caused by the defendants. In the case of *Bean* v. *Sears, Roebuck & Co.*, 129 Vt. 278, 282, 276 A.2d 613 (1971), a comparable situation was present. In that case this Court held that if the injury complained of is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensation. However, if the damage is permanent and beyond full repair, the variance in value of the property before and after the injury often affords the better guide to a just reward.

The new tank was installed on March 8, 1968. The contamination was first discovered four days thereafter. Any evi-

dence as to the before and after value of the restaurant property should have been directed to this period of time. Defendants' evidence of sale price related to October 13, 1971, which was more than three and one-half years subsequent to the relevant period. No evidence was subsequently offered by the defendants by way of a foundation for the reception of evidence as to the before and after values of the property at the time the injury occurred.

Plaintiff urges that defendants' offered evidence was properly rejected by the trial court in that it was too remote and lacked probative value. We agree. Questions of remoteness are largely within the discretion of the court. *Long* v. *Leonard*, 113 Vt. 258, 261, 32 A.2d 679 (1943). Except for the extremes of relevance where the probative value of evidence is either so slight as to require exclusion as a matter of law or so strong as to require admission as a matter of law, questions of remoteness are largely within the discretion of the trial court. *Curry* v. *Rivers*, 122 Vt. 212, 213, 167 A.2d 89 (1961). Manifestly, the trial court's ruling in the instant case was correct. Furthermore, had the answer been received, as the evidence then stood, without more, its receipt would have been improper.

Defendants' offer as to the sale price of the premises was purportedly to prove an increase in its value as a result of the new water system. The property was sold to Mr. and Mrs. DeFelice. Mrs. DeFelice is the sister of the defendant, Donald Buck.

In their brief the defendants have devoted considerable space to a discussion of the "Collateral Source Rule". They assert that had they been permitted to show the sale price, the defendants would have produced evidence to show that by purchasing the property at its increased value Mr. and Mrs. DeFelice thereby intended to compensate the plaintiff for the damage to his water system. No such offer was made.

This brings into play defendants' claim that the collateral source rule is not a factor in determining the amount of damages in the case at bar, and, therefore, evidence as to the sale price of appellee's property should have been admitted. By this claim the defendants are attempting to

avoid the collateral source rule. They cannot prevail on this point.

■ It is clearly stated in 22 Am.Jur.2d *Damages* § 206 that "benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." Vermont follows the foregoing rule. See *Northeastern Nash Automobile Co.* v. *Bartlett*, 100 Vt. 247, 257–58 (1927); *D'Archangelo* v. *Loyer*, 125 Vt. 325, 329, 215 A.2d 520 (1965).

■ We are disturbed by the size of the verdict which is challenged by the defendants. Plaintiff's undisputed evidence on the issue of damages, as hereinbefore stated, is limited to the aggregate sum of $2,291.90. The trial court charged that in the event of recovery by the plaintiff interest of 6% could be included in the verdict. Plaintiff admits in his brief that the verdict is in excess of that permitted by the evidence and charge of the court.

The verdict and judgment thereon as to defendants' liability is sustained. We hold that plaintiff is entitled to recover damages of $2,291.90 together with interest and costs. That portion of the judgment order relating to damages of $3,000.00 and costs of $20.00 must be set aside.

*Affirmed as to liability; cause remanded for the issuance of a new judgment order relating to damages in accordance with the views expressed in this opinion.*