# State of Vermont v. Danelle Ogden

[640 A.2d 6]

No. 92-386

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed November 5, 1993

Motion for Reargument Denied February 3, 1994

*Thomas M. Kelly*, Drug Prosecutor, Montpelier, for Plaintiff-Appellee.

*Michael Rose*, St. Albans, for Defendant-Appellant.

**Allen, C.J.** Defendant Danelle Ogden appeals his conviction for knowing and unlawful delivery of more than one-half ounce of marijuana in violation of 18 V.S.A. § 4230(b)(2). He claims that: (1) a search of his residence was improperly executed and evidence from it should have been suppressed; (2) the statement of a police informant should have been admitted into evidence because it was an admission by the government as a party opponent in the prosecution; and (3) flawed instructions prevented the jury from giving fair consideration to the defense of entrapment. We affirm.

On August 24, 1990, two undercover officers of the Northern Vermont Drug Task Force met an informant in Norton, Vermont, to arrange a purchase of illegal drugs, as part of an investigation in an area of the town known as Earth People's Park. The informant, Robin Stengel, had been a resident of the Park and had agreed to introduce the officers to individuals who could sell them marijuana. As a result of Stengel's efforts, defendant met with the officers just outside the Park and delivered to them approximately ten ounces of marijuana for $500.

Continuing its investigation, the Task Force obtained six search warrants for residences in the Park, including defend-

ant's. Before the execution of the warrants, the police knew that marijuana cultivators in the Park carried guns and would discharge them to warn others of police presence in the Park, that shots had been fired at a police officer when he entered the Park to make an arrest, and that others had complained of shots being fired at them in the Park. The trial court found that the officers had a reasonable basis to believe that there was a risk defendant would use firearms or otherwise engage in violence upon police entering his property.

On September 28, 1990, the police executed the warrant to search defendant's home for evidence of marijuana cultivation and sale. Defendant was at home and in bed at the time. At approximately 6:25 a.m., the police approached a woodshed-type foyer attached to defendant's house and found the door to the shed ajar. They entered the open door and proceeded to a second door, which was closed but unlocked, knocked loudly on the door, announced "State Police, search warrant," and immediately entered the premises. As a result of the search, police seized marijuana and other evidence of cultivation. Defendant was tried before a jury on the August 24 delivery of marijuana and unsuccessfully asserted the defense of entrapment.

I.

Defendant first contends that the results of the September 28 search should have been suppressed because the search was illegal. Alternatively, defendant claims that the evidence should have been excluded because its prejudicial effect outweighed any probative value. We find no error in the decision to admit the evidence at trial.

According to the first part of defendant's argument, the search was illegal because the State did not comply fully with the procedural requirements of its execution. Defendant asserts that valid execution of a warrant requires police to knock, announce their presence and purpose, and wait a reasonable period of time prior to entering the premises, and that only exigent circumstances, not present in this case, can excuse full compliance. The State argues that no such "knock and announce" requirement exists as a matter of state or federal constitutional law, and that even if it does, sufficient exigency existed to validate the immediate entry into defendant's home.

In its ruling on defendant's motion to suppress evidence resulting from the search, the trial court found that police, prior to entering the closed inner door, "pounded" on the door and uttered in a loud voice "State Police-Search Warrant." The court also found that defendant's bedroom was directly above the entrance to the house; that defendant's girlfriend, present with him at the time of the search, was a light sleeper; and that an officer outside the house clearly heard the other officers "pounding, shouting and stomping through the dwelling." The court concluded that defendant's testimony that police failed to "knock and announce" was not credible. Since the court found and defendant on appeal does not contest that the police knocked and announced their presence prior to entry, we need not decide whether either the Fourth Amendment to the United States Constitution or Chapter I, Article 11 of the Vermont Constitution mandates this procedure in executing a search warrant. We assume for purposes of discussion only that it is required. The issue is whether, after providing notice of their presence and intent to search prior to entry, exigent circumstances can permit immediate entry, and if so, whether sufficient exigency existed the morning of September 28, 1990.

■ An exigency may excuse compliance with a knock-and-announce requirement. *Rivera v. United States*, 928 F.2d 592, 606 (2d Cir. 1991); *Beshears v. State*, 593 So. 2d 174, 175 (Ala. Crim. App. 1991); *People v. Condon*, 592 N.E.2d 951, 954 (Ill. 1992); *State v. Thompson*, 571 A.2d 266, 268 (N.H. 1990); *State v. Williams*, 840 P.2d 1251, 1254 (N.M. Ct. App. 1992); *Commonwealth v. Bull*, 618 A.2d 1019, 1022 (Pa. Super. Ct. 1993); *State v. Moss*, 492 N.W.2d 627, 630 (Wis. 1992), *cert. denied*, — U.S. —, 113 S. Ct. 1428 (1993). Furthermore, the permissible degree of departure from compliance may vary with the nature of the exigency. Compare *Rivera*, 928 F.2d at 606 (failure to knock and announce acceptable only where officers have objectively reasonable belief that there exists an imminent danger of bodily harm to persons inside or of destruction of critical evidence), with *United States v. McConney*, 728 F.2d 1195, 1206 (9th Cir.), *cert. denied*, 469 U.S. 824 (1984) (warrant validly executed where officers knocked, announced presence through closed but unlocked screen door, and entered immediately out of reasonable fear that person within would be armed).

■ Thus, where the police have knocked and announced their identity and purpose, an exigency may justify immediate entry if that entry can be accomplished without physical destruction of property. *McConney*, 728 F.2d at 1206; *United States v. Whitney*, 633 F.2d 902, 909 (9th Cir. 1980). The exigency, however, must be objectively reasonable. "Whether the circumstances present sufficient exigency necessarily involves judgment. An unjustified but sincere fear by an officer cannot excuse noncompliance or the protection of the occupants' privacy interest would depend on no more than an officer's anxiety." *McConney*, 728 F.2d at 1206.

In ruling on the motion to suppress, the trial court found that the police

> had a reasonable basis and articulable facts to conclude that individuals residing in the park involved in the cultivation and/or distribution of marijuana, had access to firearms, would use those firearms to warn of police presence in order to destroy drugs on the premises and [that] there was a reasonable risk that [cultivators] would make use of firearms or otherwise engage in violence upon police entering their property.

Defendant had actual notice of the presence and purpose of the police, who were able to enter his house without physical destruction of the premises. Therefore, immediate entry was justified.

■ We emphasize that we do not decide whether the Vermont or United States constitutions mandate a "knock and announce" requirement. We hold only that where, as here, police execute a valid search warrant with an objectively reasonable belief that awaiting a reply would jeopardize the safety of officers; have knocked and announced their purpose in a manner reasonably likely to provide the subjects of the search with actual notice; and can enter without damaging the premises, the police may enter immediately without awaiting a response. We leave open the question whether immediate forceful entry may be justified. The trial court correctly denied defendant's motion to suppress.

■ We also reject defendant's alternative argument for suppression of the evidence obtained from the September 28

search, that the evidence should have been excluded because its unfairly prejudicial effect outweighed any probative value. Defendant's formulation of the balancing test described in Rule 403 omits its discretionary aspect: "[a]lthough relevant, evidence *may be excluded* if its probative value is substantially outweighed by the danger of unfair prejudice." V.R.E. 403 (emphasis added). Absent an abuse of discretion, in which the court either totally withholds or exercises its discretion on clearly untenable or unreasonable grounds, the trial court's evidentiary ruling stands on appeal. *State v. Parker*, 149 Vt. 393, 401, 545 A.2d 512, 517 (1988).

Under Rule 403, the court must first find that the evidence has probative value that makes it relevant. *Id.* at 398, 545 A.2d at 515; see V.R.E. 401 (evidence is relevant if it makes a fact of consequence more or less probable); V.R.E. 402 (relevant evidence admissible unless otherwise excluded by constitution, statute or rule). The trial court concluded that the marijuana found on September 28 would have been growing at least since August 24, demonstrating defendant's knowledge of and access to marijuana on August 24. As such, the evidence was probative and relevant to the crime charged.

The next step of the Rule 403 analysis requires consideration of whether the introduction of the evidence was so unfairly prejudicial as to outweigh its probative value; if so, the court in its discretion may exclude the evidence. *Parker*, 149 Vt. at 400, 545 A.2d at 516. The record shows that the court found that evidence that marijuana was found in the search of defendant's home had the potential for unfair prejudice. To reduce this risk, the jury was admonished at two distinct points in the trial—just after the evidence was admitted and again in the final instructions before jury deliberation—that the evidence was to be considered only on the issue of knowledge, and not as evidence of defendant's character or that he acted in conformity with that character. See V.R.E. 105 (providing for limited admissibility). Having given the limiting instruction, the court had a reasonable basis to admit the probative evidence despite its potential for unfair prejudice. Nothing indicates clear error or an inappropriate exercise of discretion by the trial court that would warrant our disturbing that ruling on review. The September 28 evidence was properly admitted.

## II.

Defendant next argues that the trial court erroneously excluded the proffered testimony of a defense witness as inadmissible hearsay, which effectively invalidated his claim of entrapment. He claims that police informant Robin Stengel, a long-time acquaintance of his, owned the marijuana that he delivered to police on August 24, and had convinced him to make the sale on her behalf. As proof of Stengel's alleged plan, defendant intended to call Brenda Wing, who was to testify that just before the transaction Stengel said that she would soon be able to repay money owed to Wing.

The State moved to exclude the statement as hearsay, but defendant asserted that Stengel's statement was admissible under V.R.E. 801(d)(2)(D) as the admission of a government agent concerning a matter within the scope of her agency, made during the existence of the agency relationship. The court assumed that an agency relationship existed between Stengel and the State at the time the statement was made, but nevertheless ruled that the statement did not concern a matter within the scope of that agency.* Therefore, the statement regarding repayment could not be admitted under Rule 801(d)(2)(D), but was inadmissible hearsay. We agree that the statement was inadmissible under Rule 801(d)(2)(D), but do not decide whether

---

* The court reconsidered its ruling the following day, and cited *United States v. Santos*, 372 F.2d 177, 180 (2d Cir. 1967) (construing federal law before adoption of the Federal Rules of Evidence), for the proposition that in a criminal prosecution, statements by an agent of the government at the investigative level are not admissible against the government. Courts have split on this issue. See, e.g., *United States v. Kampiles*, 609 F.2d 1233, 1246 (7th Cir. 1979) (government not a party opponent for purposes of Fed. R. Evid. 801(d)(2)(D)). But see *United States v. Van Griffin*, 874 F.2d 634, 638 (9th Cir. 1989) (government-promulgated manual on sobriety testing procedures could have been introduced as admission under Fed. R. Evid. 801(d)(2)(D)); *United States v. Kattar*, 840 F.2d 118, 130–31 (1st Cir. 1988) (admission where the government argued trustworthiness of statements inconsistently in separate court proceedings).

Because we agree with the trial court's first ruling that Stengel's statement to Wing did not fall within the scope of her status as government informant, we do not reach the issue of whether the government qualifies as a party opponent in a criminal prosecution for purposes of V.R.E. 801(d)(2).

the statement could have been admitted under an exception to the hearsay rule.

■ The trial court properly exercised its discretion in excluding the proffered testimony. Preliminary questions of admissibility are for the trial court, V.R.E. 104(a); *State v. Orvis*, 143 Vt. 388, 391–92, 465 A.2d 1361, 1363 (1983), including whether specific statements come within the scope of an agency relationship. A decision left to the discretion of the trial court will be reversed only where the trial court has abused its discretion. *Parker*, 149 Vt. at 401, 545 A.2d at 517.

■ A party proffering evidence under V.R.E. 801(d)(2)(D) bears the burden of establishing: (1) the existence of the agency relationship, (2) that the statement was made during the existence of that relationship, and (3) that the statement relates to a matter within the scope of that agency. *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992) (applying substantially identical Fed. R. Evid. 801(d)(2)(D) in diversity action under Vermont law of agency). The existence and extent of an agent's authority is a question of fact. *Estate of Sawyer v. Crowell*, 151 Vt. 287, 292, 559 A.2d 687, 691 (1989).

■ There is no per se rule that an informant is or is not an agent of the government; principles of agency law determine whether an informant qualifies as a police agent for entrapment or any other purpose. See, e.g., *United States v. Cruz*, 783 F.2d 1470, 1473 (9th Cir. 1986) (for purposes of entrapment defense, "[a]n informant is not necessarily a government agent"); *People v. Owczarzak*, 372 N.W.2d 683, 685 (Mich. Ct. App. 1985) (police not responsible for actions of informer taken before they agreed to employ him); *State v. Wells*, 731 S.W.2d 250, 251 (Mo. 1987) (police must take responsibility for actions of informant performed within apparent scope of informant's employment).

We assume, as the trial court did, that Stengel was an agent for purposes of Rule 801(d)(2)(D). We also assume that the alleged activities and statements supporting defendant's entrapment theory occurred during the pendency of the agency. The only question, then, is whether the alleged statement of Stengel to Wing fell within the scope of her agency as a police informant.

"The authority granted in the agency relationship need not include authority to make damaging statements, but simply the

authority to take action about which the statements relate." *Pappas*, 963 F.2d at 538. The standard for what falls within the scope of an agency has been relaxed somewhat since the adoption of the federal rules and their Vermont counterpart. Compare *Northern Oil Co. v. Socony Mobil Oil Co.*, 347 F.2d 81, 85 (2d Cir. 1965) (in diversity action under Vermont law, principal bound "'if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter'" (quoting Restatement (Second) of Agency § 286 (1958))), with Reporter's Notes, V.R.E. 801 ("The present rule adopts the broader view allowing statements about matters within the scope of employment in order to prevent loss of valuable evidence."). We believe that even under a more expansive view of agency for purposes of V.R.E. 801(d)(2)(D), the particular facts and circumstances of this case demonstrate that the alleged statement of Stengel to Wing fell outside the scope of her agency relationship.

According to defendant's entrapment theory, Stengel used him as a middleman to accomplish an illegal sale of her own marijuana to undercover police officers. Defendant did not argue, nor does the record show, that police knew anything about Stengel's alleged plan to reap a profit from the sale. The police officers testified that Stengel contacted them with information about drug sales at the Earth People's Park, and that she was willing to introduce them to dealers. In return for the information, she was provided with modest living expenses and small cash disbursements, but the record reveals no police authorization that she retain proceeds from drug sales. In sum, we find no reasonable basis to conclude that Stengel was authorized by police to arrange a sale of marijuana for personal profit, but that the purported deal exceeded the scope of her agency. Since the alleged statement to Wing concerned Stengel's proceeds from the sale, it too was outside the scope of the agency.

■ Vermont has adopted an objective test of entrapment, which focuses on the conduct of law enforcement officials, not the defendant. See *State v. Wilkins*, 144 Vt. 22, 28–29, 473 A.2d 295, 298–99 (1983). The purpose of the defense "is to deter improper governmental activity in the enforcement of the criminal laws." *Id.* at 29, 473 A.2d at 298. In this case there is no suggestion that the police engaged in improper enforcement tech-

niques or authorized Stengel as their agent to do so. The policy of deterrence would not be served were Stengel's alleged statement to Wing attributed to the police. Indeed, the very notion of a "scope" of agency demonstrates an awareness that as a matter of simple fairness a principal will not be answerable for every action of an agent. We emphasize, however, that the fact-based inquiry as to the extent and nature of agency precludes the police from denying responsibility for the actions of their informants as a matter of course.

Absent any proof of police approval or authorization, Stengel's alleged plan to pursue a criminal course of conduct was not within her agency. We hold that ample uncontested evidence exists in the record to provide a reasonable basis for a holding that Stengel's alleged statement to Wing was inadmissible as an admission of the State under V.R.E. 801(d)(2)(D). The court could reasonably have concluded that the statement fell outside any agency relationship she had with the government, and, therefore, did not abuse its discretion.

## III.

As the final issue on appeal, defendant claims that the court's instructions to the jury gave short shrift to the defense of entrapment, which rendered the charge unbalanced and unfair. Defendant acknowledges that the court fully instructed the jury on entrapment, but finds fault in the court's failure to reiterate the possibility of exoneration by entrapment in the final sentences of the jury charge. We find no merit in this claim. Reviewing a jury charge, this Court examines it as a whole, not piecemeal. *State v. Davis*, 157 Vt. 506, 511, 601 A.2d 1381, 1383 (1991). The trial court emphasized the need for the jury to consider the instructions as a whole in its deliberations, and not to single out one instruction alone as stating the law. Since a complete and adequate instruction as to the entrapment defense was included in the jury charge, we cannot find the instructions unfair or unbalanced.

*Affirmed.*