2005 VT 99

## State of Vermont v. Lamont Lee

[886 A.2d 378]

No. 02-512

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed August 19, 2005

*William D. Wright*, Bennington County State's Attorney, and *Brian K. Marthage*, Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals his convictions on two counts of felony sale of cocaine, possession of marijuana, and attempting to elude a police officer. He argues that he was unfairly prejudiced by the admission of photographic evidence of two guns the police found during searches of defendant's home and vehicle. Defendant also challenges the court's jury instructions. We affirm.

¶ 2. In August 2000, defendant was living in Pownal with his girlfriend and her mother, Beverly Washington. Beverly became concerned that defendant was dealing drugs, and she contacted law enforcement authorities. Eventually, Beverly spoke with a trooper

assigned to the Southern Vermont Drug Task Force (SVDTF) and agreed to assist him in an investigation of defendant's activities. Thereafter, Beverly purchased. cocaine from defendant on two occasions while wearing a hidden recording device. The investigation ended when Beverly informed her contact at SVDTF that defendant had acquired two guns. The information prompted the trooper to arrest defendant.

¶ 3. On August 30, 2000, the police were watching defendant's residence when they saw defendant drive towards Route 7. The officers signaled for defendant to pull over, but he drove away. After some pursuit, defendant pulled his vehicle over to the side of the road, jumped out of the still moving vehicle, and ran. The police eventually caught up with defendant, arrested him, and searched his home and vehicle pursuant to a search warrant. During the search of defendant's car, the police found an unloaded .410 caliber gun on the driver's side floor. Another gun, along with marijuana, was found in a closet off of the bedroom defendant shared with his girlfriend.

¶ 4. On August 31, 2000, the State filed informations in district court charging defendant with attempting to elude a police officer, possession of marijuana, and two counts of felony sale of cocaine. In May 2002, defendant filed notice with the court that he intended to raise entrapment as an affirmative defense. Defendant also filed motions in limine to exclude certain evidence, two of which are relevant to this appeal. The first sought to exclude photographic evidence of the gun found in defendant's car and the gun found in the bedroom where defendant was staying. Defendant argued that the gun evidence would unfairly prejudice him because it lacked any probative value. Defendant's motion noted that because he was a previously-convicted felon, possession of the guns was a federal offense, and he had already been convicted and sentenced for this offense in federal court.

¶ 5. The second motion in limine related to evidence of a nighttime intrusion into defendant's residence by two men sometime between August 24 and August 28, 2000. The intruders ransacked defendant's room, assaulted him, and tied up him and his girlfriend. The intruders shouted references to crack cocaine during the break-in and assault. Defendant argued that evidence of the home invasion was overly prejudicial and irrelevant to the charges against him.

¶ 6. The court excluded evidence of defendant's federal gun conviction and the. intrusion into. defendant's home, and admitted the photographs of the guns. The court found that the gun evidence was probative of three issues. First, the presence of a gun in defendant's

car could explain why he ran away from the police. Second, the guns were tools of the drug trade. Third, the fact that he possessed two firearms could rebut an inference that Beverly and the police entrapped him into selling cocaine — defendant's primary defense to the drug-sale charges.

¶ 7. Before the second day of trial began, defendant's attorney announced that he wanted to present evidence about the break-in. He argued that the gun evidence was so prejudicial to defendant that he was compelled to rebut it by introducing the break-in to support defendant's claim that he obtained the guns for protection. Noting that defendant's decision was a strategic one, the court ruled that it would permit him to introduce limited evidence about the break-in. The jury eventually convicted defendant of all the charges against him, and this appeal followed.

¶ 8. We first address defendant's claim that the trial court erred in admitting the gun evidence. In deciding whether to admit evidence, the court must make an initial determination that the evidence is relevant. V.R.E. 402 ("All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute .... Evidence which is not relevant is not admissible."). Relevant evidence encompasses any evidence that makes the existence of a fact that is "of consequence to the determination of the action" more probable than not. V.R.E. 401. If relevant, the court may still exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." V.R.E. 403.

¶ 9. Defendant argues that evidence of his gun possession was irrelevant to the crimes for which he was charged, and, even if relevant, its probative value was so limited and its prejudicial impact so great that it had to be excluded under Rule 403. The State responds that evidence of the gun found in the closet was relevant to show he possessed the marijuana also found in the closet, and evidence of the gun found in the car was relevant to show his motive to elude the police when they attempted to arrest him.

¶ 10. The decisions from other jurisdictions, particularly from the federal courts, overwhelmingly support the main ground on which the court relied — that the guns are relevant to show defendant is a

drug dealer.[1] Thus, in a leading case, the United States Court of Appeals for the Second Circuit held: "Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment." *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir. 1976). Other circuits have affirmed admission of gun evidence on the same rationale. See *United States v. Martinez*, 938 F.2d 1078, 1082-83 (10th Cir. 1991) (admitting evidence of semi-automatic submachine gun found in house defendant entered during drug transaction as "tools of the trade") (collecting cases); see also *United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999) ("Guns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia."); *United States v. Price*, 13 F.3d 711, 719 (3d Cir. 1994) (recognizing that evidence of gun possession was highly probative of drug conspiracy); *United States v. Fagan*, 996 F.2d 1009, 1015 (9th Cir. 1993) (affirming admission of evidence of a gun and ammunition found in residence of defendant charged with possession and distribution of cocaine). Defendant argues that this relevancy theory does not apply in this case because the drug sales occurred before defendant acquired the guns. The relevancy theory does not depend on the use of the guns in the drug sale.[2] See *Martinez*, 938 F.2d at 1083 (explaining that it is

---

[1] We agree with the State that the gun found in the closet was admissible to show defendant possessed the drugs also found in the closet. The evidence discloses that defendant admitted to the police officer that he owned the gun.

We cannot agree, however, that evidence of the gun found in the car was relevant to show defendant's motive for fleeing from the police. The jury members were not aware that defendant's possession of the gun was a federal crime, and, as a result, they could not understand that defendant would flee from the police to avoid being found with the gun. Moreover, defendant was charged with attempting to elude a police officer, 23 V.S.A. § 1133, and this is a strict liability offense that does not contain an element of intent. *State v. Roy*, 151 Vt. 17, 26-27, 557 A.2d 884, 890-91 (1989). Thus, we find that defendant's motive in fleeing from the police was irrelevant to the offense.

[2] The dissent characterizes this decision as a per se ruling that guns are always relevant in a drug prosecution. Our holding is not so broad. We simply affirm the trial court's assessment that in this case, given our broad relevance standard, the evidence of the guns made it more probable than not that defendant sold drugs. See V.R.E. 401.

The dissent also concludes that the guns had "infinitesimal probative value," *post*, ¶ 24, because of the other evidence linking defendant to the drug sales. This comparison is not the proper method for determining relevancy because "[t]he test of relevancy is . . . not whether the evidence makes the proposition for which it is offered more probable than competing propositions, but rather whether the evidence has any tendency to

"basically immaterial to the admissibility inquiry" whether defendant has been charged with an offense involving use of the gun); *State v. Smith*, 1992 WL 61363, No. CA-8715, at *3 (Ohio Ct. App. Mar. 16, 1992). The dissent emphasizes that defendant obtained possession of the guns after the date of the drug sales for which he is charged. While the time gap between the drug sales and the possession of the guns may go to the weight of the evidence, we do not believe that it makes the gun evidence irrelevant, as the dissent argues.[3] In fact, defendant had owned the guns before the drug sales, but had left them with a friend, apparently because it was a federal offense for defendant to possess a gun.

¶ 11. In addition to challenging relevancy, defendant makes the stronger argument that the gun evidence should have been excluded under Rule 403 as unduly prejudicial. Here, however, defendant must overcome a very deferential standard of review. Rule 403 rulings are "highly discretionary," *State v. Gibney*, 2003 VT 26, ¶ 23, 175 Vt. 180, 825 A.2d 32, even more so when they refuse to exclude evidence because the rule provides that the danger of unfair prejudice must *substantially outweigh* the probative value of the evidence. *State v. Percy*, 158 Vt. 410, 415, 612 A.2d 1119, 1123 (1992). "Absent an abuse of discretion, in which the court either totally withholds or exercises its discretion on clearly untenable or unreasonable grounds, the trial court's evidentiary ruling stands on appeal." *State v. Ogden*, 161 Vt. 336, 341, 640 A.2d 6, 10 (1993). Defendant's prejudice argument is essentially that the jury would give too much weight to the gun evidence, especially because defendant is black, finding that he was a drug dealer solely because he possessed guns.

---

establish (or refute) the proposition." Reporter's Notes, V.R.E. 401. At the time the court ruled on the motion in limine, defendant had not admitted to the drug sales, and thus the State was required to prove the offenses with which he was charged including that defendant was engaged in "knowingly and unlawfully selling cocaine," 18 V.S.A. § 4231(b)(1). As we hold above, the gun evidence was relevant to the State's proof.

[3] The dissent contends that defendant's acquisition of the guns was irrelevant as a matter of law because it was so far removed in time from the drug transactions. Although situations exist where acts are too remote to be relevant, such is not the case here where defendant obtained the guns within two weeks of the drug sales. See *State v. Winter*, 162 Vt. 388, 397-98, 648 A.2d 624, 629-30 (1994) (concluding prior act that occurred four years previously too remote); *Bradley v. Buck*, 131 Vt. 368, 370-71, 306 A.2d 98, 100-01 (1973) (affirming exclusion based on remoteness where over three years passed between events).

■ ¶ 12. We conclude that the balance to be struck falls within the wide discretion of the trial court. See *Ward*, 171 F.3d at 195 (decision whether to admit gun evidence in a drug sales prosecution must be made on a case-by-case basis by the trial court). The trial court noted that the guns were probative of whether defendant was involved in the drug transactions, and that possession of firearms is common in Vermont so the danger of unfair prejudice was minimized. The dissent claims the gun evidence was prejudicial because it depicted defendant as a dangerous person and cumulative because neutral evidence could have established defendant's possession of the marijuana. The dissent then goes on to do its own balancing of the gun's probative weight versus the danger of unfair prejudice or confusion of the issues, concluding that the "combination of prejudice and cumulativeness tips the 403 scales toward the side of exclusion," *post*, ¶ 36, so that the court's admission was error. "Our precedents have not required that the trial court specify precisely the weight it assigns to probative value or prejudicial effect or specify why one overweighs the other." *State v. Derouchie*, 153 Vt. 29, 35, 568 A.2d 416, 419 (1989). We find no abuse of discretion in the decision to admit the gun evidence under Rule 403.

¶ 13. The dissent further asserts that the trial court's error in concluding that the prejudicial effect of the gun evidence did not substantially outweigh its probative value under Rule 403 was not harmless and requires reversal. Under our rules, erroneous admission of evidence is harmless if the jury would have returned a guilty verdict regardless of the error. *State v. Wright*, 154 Vt. 512, 519-20, 581 A.2d 720, 725 (1989); see V.R.Cr.P. 52(a) ("Any error ... which does not affect substantial rights shall be disregarded."). The dissent speculates that the gun evidence so influenced the jury's consideration of defendant's entrapment defense that the verdict is compromised. Because we decide that the court's decision was within its discretion, we do not reach the question of whether such an error would be reversible.

¶ 14. Defendant fares no better in arguing that the court should have examined the admissibility of the gun evidence under Rule of Evidence 404(b). Rule 404(b) prohibits "[e]vidence of other crimes, wrongs, or acts" to prove an accused's bad character, but permits such evidence as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Defendant claims that the trial court failed to specifically articulate the reason it admitted the evidence under Rule 404(b). This argument is raised for the first time on appeal. Defendant never argued to the trial court that the gun evidence was inadmissible bad act evidence intended to demonstrate

defendant's character. Thus, the argument is not preserved for our review. V.R.E. 103(a)(1); *State v. Lettieri*, 149 Vt. 340, 343-44, 543 A.2d 683, 685 (1988).

¶ 15. Even if defendant had preserved the argument, the result would be no different because he has not explained how the mere possession of a firearm amounts to a bad act. The trial court's ruling recognizes that gun ownership in Vermont is not unusual. The fact that defendant was convicted of possessing the guns unlawfully does not alter the analysis because the jury was unaware defendant was prohibited from possessing a firearm and of his resulting conviction. Absent evidence to demonstrate that defendant's gun possession was somehow wrongful, the court was not required to analyze admission of the evidence under a Rule 404(b) standard.

¶ 16. Defendant also argues that the admission of the gun evidence was reversible error because it required him to explain why he possessed them by presenting testimony about the home invasion. Defendant characterizes his circumstances as a Hobson's choice, because although he knew the home invasion evidence was prejudicial, he was forced to introduce it due to the trial court's ruling on the gun evidence.

¶ 17. Defendant's argument is unpersuasive. The trial court's obligation is to rule on admissibility questions prior to trial when the evidence may affect defense strategy. See *State v. Ryan*, 135 Vt. 491, 497, 380 A.2d 525, 528-29 (1977) (directing trial court to rule on motion at inception of trial if ruling will affect defense strategy). After an admissibility ruling, it is the defendant's decision how to proceed with trial strategy. See *State v. Byrne*, 149 Vt. 257, 263, 542 A.2d 667, 671 (1988) (holding that once defendant decided to open the door to a line of questioning, defendant could not claim error on appeal). Defendant adopted the trial strategy of showing the home invasion although, in retrospect, it may have reinforced the impression that defendant wanted to avoid — that he obtained the guns to combat the kind of violence associated with drug dealing. As a result, the testimony focused in detail on the guns, where the references to them would otherwise have been brief. Defendant, not the trial court, bears the responsibility for these choices.

¶ 18. Defendant's last challenge is to the court's jury instruction, explaining that evidence of defendant's "alleged prior bad acts" had been admitted, but the evidence could be considered for a limited purpose only. The court explained that such evidence cannot be used to

prove defendant has a bad character, and that because of this character, he committed the offenses charged. Defendant claims the instruction labeled the gun evidence as "bad," thereby causing the prejudice the court said was absent from the mere ownership of guns in Vermont. He also contends that the court did not put the instruction in context by failing to identify the evidence to which it related and to explain its proper purpose.

¶ 19. We review this last claim for plain error because defendant did not object to any portion of the jury instructions, including the instruction he now asserts was erroneous. V.R.Cr.P. 30; *State v. Little*, 167 Vt. 577, 578, 705 A.2d 177, 179 (1997) (mem.). To prevail under this standard, defendant must show that the error was so grave and prejudicial that "failure to recognize it would strike at the heart of defendant's constitutional rights or result in a miscarriage of justice." *State v. Carrasquillo*, 173 Vt. 557, 559, 795 A.2d 1141, 1144 (2002) (mem.). As we discussed above, defendant's possession of the guns was not a bad act, and there is no indication that the jury would have thought it so. Because we have no transcript of a jury charge conference to show how the charge was constructed, we do not know why the court included a bad act charge or to what evidence it referred. See V.R.Cr.P. 26(c) (requiring court to give a limiting instruction, "if requested," when evidence of "other criminal offenses" is admitted). In any event, we cannot conclude that this instruction prejudiced defendant and certainly cannot conclude that it struck at the heart of defendant's constitutional rights or resulted in a miscarriage of justice.

*Affirmed.*

¶ 20. **Johnson, J.**, dissenting. I cannot agree with the majority's holding that a defendant's gun ownership is per se relevant to show that a defendant is a "drug dealer." Although there may be specific instances in which gun evidence would be relevant to the State's case against a defendant accused of selling drugs, this is not such a case. The State charged defendant with two counts of selling cocaine. A week after the second and final transaction upon which the charges were based, defendant acquired two firearms. Defendant neither used the guns as part of the drug transactions, nor even possessed the guns at the time the sales occurred. Nonetheless, the majority adopts the trial court's conclusion that the gun evidence is probative of whether defendant was involved in the sales. I recognize that we have a broad standard for relevance, and that the trial court's rulings on this issue will only be reversed on a showing that the court abused

its discretion. Even under that deferential standard of review, I fail to see how the acquisition of firearms that occurs *after* and independently from a nonviolent drug sale tends to show that defendant sold drugs on the earlier occasions. Even if I were to accept this attenuated inference, I would still conclude that the after-acquired firearms should have been excluded because their slight probative value in this case is substantially outweighed by the prejudice and confusion of the issues that their introduction caused. I would hold that the guns were not relevant in the context of this case, and, moreover, the court's refusal to exclude them under Vermont Rule of Evidence 403 was an abuse of discretion. Accordingly, I dissent.

¶ 21. The majority correctly notes that our rule-based relevance standard is broad. The majority is incorrect, however, in asserting that the "time gap between the drug sales and the possession of the guns" goes only to the weight the gun evidence should be given by the trier of fact. *Ante*, ¶ 10. Temporal remoteness may also be a bar to admissibility. Cf. *State v. Winter*, 162 Vt. 388, 396-97, 648 A.2d 624, 629 (1994) (holding that remoteness of evidence of accused's prior crimes affects admissibility as well as weight). As the Reporter's Notes to Rule 401 recognize, "evidence which is logically probative in a technical sense may still be irrelevant for the familiar reason that it is of a matter too remote in time or place." Accordingly, we have held that questions of remoteness lie largely within the trial court's discretion, except at the "extremes of relevance where the probative value of the evidence is . . . so slight as to require exclusion as a matter of law." *Bradley v. Buck*, 131 Vt. 368, 371, 306 A.2d 98, 101 (1973).

¶ 22. In ruling on the motion to exclude, the trial court stated that it did not "feel that it's that speculative; that an argument can be made that, you know, that firearms may be used in drug transactions," and thus the guns had "some probative value as to the issue of whether [defendant] was involved in these transactions." I agree that guns are sometimes used in drug transactions, either for the protection of the dealer or as tender in the exchange for drugs. It defies common sense, however, to suggest that guns that were not even in defendant's possession at the time of the drug transactions somehow make it more likely that defendant participated in the earlier transactions.

¶ 23. Under Rule 401, evidence that does not pertain directly to an element of the crimes charged, such as the guns in this case, may still be relevant to the resolution of other factual disputes of "consequence." But in this case, there is no logical connection between the guns and the evidentiary narrative relating to the drug charges. There

is no evidence that guns were used in the drug deals that defendant is charged with executing, or in any other drug deals for that matter. Nothing in the evidence suggests that defendant alluded to the guns in any way and at any time prior to or during the drug deals. Similarly, the State has not suggested that defendant purchased the guns with proceeds from the drug sales, and thus that the guns represent fruits of defendant's criminal enterprise. Instead, the State's case is based on testimony from the police informant who purchased the drugs directly from defendant while wearing a recording device, and the police officers who facilitated and supervised the informant. The State also introduced the taped conversation that transpired between defendant and the informant at the time of the second purchase, and the cocaine that the informant obtained after her encounters with defendant.

¶ 24. When compared to the substantial direct evidence that defendant was in fact involved in the alleged transactions, and in light of the majority's recognition of and reliance on the fact that gun ownership is common in Vermont, the gun evidence here is circumstantial evidence with infinitesimal probative value. In view of its after-the-fact remoteness and slight probative value, the gun evidence should have been excluded as a matter of law.

¶ 25. A close inspection of the cases cited by the majority in support of its "tools of the trade" per se relevance theory reveals several important distinctions between those cases and the instant case. Most of the cases the majority cites in support of its rationale involve drug conspiracies. Unlike the present case, where the prosecution has ample direct evidence of defendant's involvement in the drug deals, prosecutors in conspiracy cases should receive greater latitude with circumstantial evidence, which is often the only type of evidence available to prove the conspiracy. See *State v. Berger*, 733 A.2d 156, 164 (Conn. 1999) ("Because of the secret nature of conspiracies, a conviction usually is based on circumstantial evidence."); *United States v. Infante*, 404 F.3d 376, 385 (5th Cir. 2005) ("[B]ecause secrecy is the norm in drug conspiracies, each element of the crime may be established by circumstantial evidence.").

¶ 26. For example, in *United States v. Martinez*, 938 F.2d 1078 (10th Cir. 1991), defendant was charged with cocaine distribution and conspiracy to distribute cocaine. The court admitted guns that were hidden in a house that defendant visited while under surveillance, along with a half pound of cocaine found there, to prove a "key point in support of [the prosecution's] evidentiary hypothesis" that the house was a "'stash' house" where defendant procured his drugs on the day

of the deals leading to his arrest. *Id.* at 1084. Thus, the court affirmed the district court's decision to admit the items as probative of the defendant's participation in the drug distribution business. *Id.* at 1083.

¶ 27. The defendant in *United States v. Wiener*, 534 F.2d 15 (2d Cir. 1976), was charged with one count of conspiracy and two counts of possession with intent to distribute hashish. The court affirmed admission of a gun found in his apartment on the day of his arrest. *Id.* at 18. The defendant's apartment was the alleged "focal point" of his drug ring, and the gun was found in a bag with marijuana and hashish smoking paraphernalia. *Id.*

¶ 28. Similarly, in *United States v. Price*, 13 F.3d 711 (3d Cir. 1994), where defendant was one of several accused drug conspirators, the court upheld the admission of a prior gun conviction because it was "highly probative of the large scale of a narcotics distribution conspiracy and the type of protection the conspirators felt they needed to protect their operation." *Id.* at 719 (quotations omitted). In contrast, defendant in the instant case is charged only with two drug sales amounting to a total of less than $200.

¶ 29. By lifting broadly worded pronouncements out of these federal cases, without appreciation for the significant factual distinctions involved here, I fear that the majority has adopted a per se rule that guns are always relevant and sufficiently probative in drug sale cases. This Court is ordinarily wary of adopting per se rules in criminal cases. See, e.g., *State v. Leggett*, 167 Vt. 438, 444, 709 A.2d 491, 495 (1997) (declining to adopt per se rule requiring reversal whenever hearsay testimony is admitted without a finding of good cause to dispense with a probationer's confrontation right); *State v. Kirchoff*, 156 Vt. 1, 8, 587 A.2d 988, 993 (1991) (rejecting per se approach to the privacy inquiry in open-fields search and seizure cases under Article 11). For example, in *State v. Roy*, 151 Vt. 17, 23, 557 A.2d 884, 888 (1989), we reviewed the position taken by several of our peer jurisdictions that the omission of an essential element of the offense from the charge to the jury is automatically plain error warranting reversal. In rejecting this approach, we stated our belief that "it would be bad policy to create a category of errors which are plain per se." *Id.* It is equally bad policy to designate a category of evidence — guns — as relevant per se in cases where a defendant is charged with selling drugs — especially in Vermont where, as the majority and trial court noted, gun ownership is a trait common to many people who have nothing to do with the drug trade.

¶ 30. Relevance rulings are case-specific by their very nature, and should remain so. I agree that there may be future drug cases where evidence of a defendant's gun possession may be relevant and highly probative of the issues involved, but this is not one. By adopting the "tools of the trade" theory into our law in a case where defendant did not possess the tools in question until a week after the crime was committed, the majority creates a broad, generally-applicable presumption in favor of relevance without regard to the remoteness issues that may arise in future cases.

¶ 31. Curiously, the State has made no attempt to support the "tools of the trade" rationale on appeal, omitting any mention of this theory from its brief. Instead, it suggests alternative grounds for admission of the gun evidence, urging this Court to affirm "even where the trial court ... reaches the right result for the wrong reason." See *State v. Willis*, 145 Vt. 459, 477, 494 A.2d 108, 118 (1985) ("A trial court may achieve the correct results for the wrong reasons."). Because I agree with the State's apparent concession that the trial court erred in admitting the guns as "tools of the trade," I have also considered whether any other basis supports the trial court's evidentiary decision. After reviewing the trial record, I conclude that the trial court's alternative reasons for admitting the gun evidence were also based on legal errors, and that probative weight assignable to the additional ground raised by the State for the first time on appeal is overcome by the substantial potential for prejudice and confusion of the issues that resulted from introduction of the gun evidence. Accordingly, I cannot conclude that the court's decision was harmless.

¶ 32. On appeal, the State argues two grounds for admission of the guns: (1) that one of the guns was relevant to the attempting-to-elude charge because it was in defendant's car at the time the police arrested him, thus explaining his motivation in fleeing; and (2) that the gun found in his closet was relevant to show that defendant, who admitted to owning the gun, also owned the marijuana found nearby. The majority correctly points out that the gun evidence was not relevant to the charge for attempting to elude a police officer because it is a strict liability offense for which no showing of intent is required, and furthermore, that the jury lacked background information necessary to understand why the guns would motivate defendant to flee. *Ante*, ¶ 10 n.1. Accordingly, the trial court erred by assigning the gun evidence probative weight based on its relevance to the attempting to elude charge. As to the State's new argument, I agree with the majority and the State that one of the two guns was relevant to, and

probative of, the possession of marijuana charge. But I cannot conclude that the trial court's Rule 403 analysis would still have resulted in admission of the gun evidence if the only weight properly on the scale had been its relevance to show possession of the marijuana.[4]

¶ 33. As the majority notes, defendant did not deny owning the gun found in the closet with the marijuana. Thus, the gun tends to show that defendant had access to and perhaps control over the closet where the marijuana was found, making it more likely that the marijuana belonged to defendant. The State could, however, have easily proved its case on this charge without the gun evidence. The detective who discovered both the gun and the marijuana while executing the search warrant for the home testified that the closet could be accessed only through defendant's bedroom; that the closet contained male clothing; and defendant was the only male living in the home.

¶ 34. Despite these facts, the gun evidence was substantially more prejudicial to defendant's case than it was probative of the issues germane to the possession-of-marijuana charge. The trial court and the majority frame the issue of gun ownership as a neutral factor that cannot be considered, in and of itself, as prejudicial in a state like Vermont, where many people own guns. But this approach flatly ignores the context of this case. The references to the guns in the State's case-in-chief imply that, once armed, defendant presented a danger to the community. The State first mentioned the guns in its opening statement, saying that six days after the second controlled drug buy, "[t]he Southern Vermont Drug Task force runs into a problem. They find out that the Defendant has acquired two firearms, and because of this, they decide to shut down this drug operation and arrest the defendant." During direct examination of Detective

---

[4] The majority complains that this dissent engages in its own Rule 403 balancing, implying that this is a usurpation of the trial court's function. To some extent balancing in the appellate court is unavoidable when the trial court factors errors of law into its Rule 403 balancing. The majority and the dissent agree that the trial court erred by finding evidence of the gun in the car relevant to and probative of the attempting-to-elude charge. The transcript shows that the trial court factored this error into its Rule 403 balancing. Thus, in reviewing the trial court's decision, both the majority and the dissent have to reassess the balancing, taking into account the error. The majority and dissent disagree on the question of whether the trial court incorporated a second error of law into its balancing by concluding that the gun evidence was both relevant to and probative of the question of whether defendant "was involved in these [drug] transactions." Accordingly, the dissent and majority reach different conclusions after conducting our own respective reassessments; this is a difference in result, not process.

Gazzaniga, the guns were again mentioned in the same context, explaining why the police moved to arrest defendant. The State covered the same ground with Detective Barsi, who also testified that the decision to arrest Lee was based, in part, on the fact that defendant had obtained two firearms. Detective Barsi also testified about one of the guns, describing it as a handgun, but noting that it "fires a much larger round than I would normally anticipate from a handgun."

¶ 35. These repeated references to the guns unmistakably suggest that defendant is a dangerous person, who police arrested at a specific point in time out of fear that he might put the guns to illegal and violent use. The context here is not neutral gun ownership for skeet shooting or deer hunting. The jury would likely assign great credibility to this testimony coming from experienced police officers. While I do not question the validity of the officers' assessment of the situation or the propriety of the actions they took in response, the admission of the evidence powerfully prejudiced the jury against defendant by raising the specter that he was preparing to commit a violent act.

¶ 36. Moreover, although one of the guns may be relevant to showing ownership of the marijuana, the other neutral evidence cited above accomplishes the same function as the gun evidence admitted over defense objection. Accordingly, under Rule 403, the cumulative nature of this highly prejudicial evidence must also be weighed against its probativeness. The combination of prejudice and cumulativeness tips the 403 scales toward the side of exclusion.

¶ 37. When viewed in light of defendant's sole hope of acquittal at trial — the entrapment affirmative defense — the admission of the gun evidence and its presentation by the State at trial cannot be considered harmless error. The purpose of the entrapment affirmative defense, as recognized in Vermont, is to "deter improper governmental activity in the enforcement of the criminal laws." *State v. Wilkins*, 144 Vt. 22, 29, 473 A.2d 295, 298 (1983). Entrapment will be found where the inducement or persuasion employed by the police is so great that even a hypothetical reasonable person, i.e., one who is not otherwise ready to commit the criminal offense charged, would succumb to such persuasion and commit the crime. *Id.* at 30, 473 A.2d at 299. The focus of the legal and factual entrapment inquiry is, therefore, on the conduct of law enforcement in setting up the sting operation that produced direct evidence of defendant's participation in the two controlled drug buys. *State v. George*, 157 Vt. 580, 583-84, 602 A.2d 953, 955 (1991) (citing *Sebesta v. State*, 783 S.W.2d 811, 814 (Tex. Crim.

App. 1990) ("This is purely an objective test, and the trier of fact's vision should focus solely upon the State's actions.")).

¶ 38. After using the gun evidence to suggest that defendant's acquisition of firearms was a prelude to violence, thus necessitating urgent police intervention, the State effectively distracted the jury from considering the proper boundaries for law enforcement in drug-related investigations. Defendant conceded that he was a drug user, and claimed that he only made the sales at issue to placate the police informant, who also happened to be the mother of defendant's girlfriend and the person that was providing defendant with a place to live. Admission of the gun evidence compromised the jury's ability to consider whether repeated requests for drugs made by this informant, who had substantial influence over vital aspects of defendant's life, amounted to improper police inducement or coercion, i.e., entrapment.

¶ 39. Defendant's gun possession was remote in both time and place from the drug counts at issue here, and, therefore, not relevant to them. Under these circumstances, and in view of the prejudicial testimony that resulted from the admission of the gun evidence, I would reverse and remand for a new trial, holding that the trial court erred in admitting the gun evidence in this case, and that such error was not harmless. I would reverse defendant's drug sale convictions, and remand for a new trial on those two counts. I am authorized to state that Justice Skoglund joins in this dissent.