### State of Vermont v. Mark Wilkins

[473 A.2d 295]

No. 82-152

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed December 29, 1983

*John J. Easton, Jr.*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Nancy E. Kaufman*, Montpelier, for Defendant-Appellant.

**Hill, J.** Defendant Mark Wilkins appeals his conviction for breaking and entering in the nighttime in violation of 13 V.S.A. § 1201. We agree with the defendant's contention that the trial court committed plain error by incorrectly instructing the jury on the burden of proving entrapment. We reverse his conviction on that point and therefore do not address the argument that the trial court's instruction regarding breaking and entering was erroneous.

The defendant does not contest the fact that he stole a pair of surgical pin cutters from a storage room of the Fanny Allen Hospital in Colchester. He claims, however, that he was entrapped by the police into taking the cutters.

About two months before the offense occurred, the defendant met James Dobson, an undercover police officer for the Burlington Police Department. Dobson socialized with the defendant at a local bar as part of his undercover activities. On the night of the offense, the defendant went to Dobson's apartment. According to Dobson, the defendant insisted that Dobson drive him to a hospital so he could steal some tanks of nitrous oxide (laughing gas). Dobson resisted, primarily because police surveillance had not been arranged. The defendant persisted in his request, however, since Dobson's car, a station wagon, was large enough to accommodate the tanks. Dobson finally agreed to the defendant's request. On the way to the car, Dobson excused himself and returned to his apartment to arrange for police surveillance. After driving to Fanny Allen Hospital, Dobson waited in the car while the defendant entered the hospital through the loading dock doors and returned not with the nitrous oxide but with the pin cutters. The defendant was later arrested in Burlington by the police officer who had been notified by Dobson to provide surveillance.

The defendant's version of the incident differed significantly from Dobson's. He claims that Dobson, who was known to him as someone who bought and sold stolen property, approached him in a bar and asked him to assist him in stealing a pair of bolt cutters from Fanny Allen Hospital. The defendant claims that he resisted, and that he agreed to help Dobson only after Dobson plied him with a few drinks. According to the defendant, Dobson told him that he had arranged with a hospital employee to leave the bolt cutters in an unlocked storage room, and that all the defendant had to do was enter the hospital through the emergency doors, go into the storage room and take the cutters. The defendant found the cutters in the unlocked storage room, hid them under his jacket, and then returned to the car, where Dobson was waiting.

I.

In its instruction to the jury, the trial court stated that the defendant had raised the issue of entrapment. The court defined entrapment as "the inducement of one to commit a crime not contemplated by himself with a mere purpose of instituting a criminal prosecution against him." Then the court

instructed the jury that the "burden of proof is upon the defendant to convince you of the element of entrapment."

The defendant claims that this instruction improperly implied to the jury that the defendant had the burden of proving entrapment beyond a reasonable doubt. Since the defendant did not object to the instruction when it was given, this Court will reverse only if it was plainly erroneous. *State* v. *Darling*, 141 Vt. 358, 362, 449 A.2d 928, 929 (1982); see V.R.Cr.P. 52(b).

In *State* v. *Dragon*, 130 Vt. 334, 292 A.2d 826 (1972), we held that:

> Entrapment is an affirmative defense and the accused has the burden of establishing it. It imposes on him the burden of going forward with evidence showing that he was induced to commit the act for which he is being prosecuted.

*Id.* at 342, 292 A.2d at 831. The trial court in *Dragon* instructed the jury that the defendant had the burden of proving entrapment beyond a reasonable doubt; this Court disagreed with that allocation, stating that "the burden of proof called for [by the court] was too great." *Id.* at 342, 292 A.2d at 832.

Consistent with our statements in *Dragon*, we hold today that the defendant has the burden of establishing the affirmative defense of entrapment only by a preponderance of the evidence, not by proof beyond a reasonable doubt. The United States Supreme Court has upheld allocating to the defendant the burden of proving an affirmative defense by a preponderance of the evidence. *Patterson* v. *New York*, 432 U.S. 197 (1977) (law requiring defendant to prove affirmative defense of extreme emotional disturbance by a preponderance of the evidence in a murder prosecution does not violate due process). Similarly, the Vermont legislature has indicated an intent to require defendants to prove affirmative defenses by a preponderance of the evidence. See 13 V.S.A. § 4801(b) ("The defendant shall have the burden of proof in establishing insanity as an affirmative defense by a preponderance of the evidence."). Finally, several other jurisdictions require defendants to prove entrapment by a preponderance of the evi-

dence. See, e.g., *State* v. *Kelsey*, 58 Hawaii 234, 566 P.2d 1370 (1977) ; *People* v. *Hochberg*, 62 A.D.2d 239, 404 N.Y.S.2d 161 (1978) ; see also *Dravo* v. *State*, 46 Md. App. 622, 420 A.2d 1012 (1980) (defendant has burden of proving inducement by a preponderance).

 In its instruction to the jury in this case, the trial court stated that "the burden of proof is upon the defendant to convince you of the element of entrapment." Thus, the court never expressly delineated the defendant's burden of proof. The only burden of proof the court referred to in its charge was that the State has the burden of proving the essential elements of the crime beyond a reasonable doubt. Since proof beyond a reasonable doubt was the only standard the court mentioned, the jury naturally would infer, in the absence of instructions to the contrary, that this standard applied not only to the State's burden but also to the defendant's burden. The defendant is obliged to prove entrapment only by a preponderance of the evidence; therefore, we hold that the trial court's instruction constituted plain error. Accord *United States* v. *Pugliese*, 346 F.2d 861, 863 (2d Cir. 1965). We reverse the defendant's conviction and remand for a new trial.

## II.

This Court has never determined what elements constitute the defense of entrapment. Since this issue will recur at retrial, it is appropriate for us to consider it here. *State* v. *Carmody*, 140 Vt. 631, 637, 442 A.2d 1292, 1295 (1982).

The United States Supreme Court first addressed the issue of what constitutes the defense of entrapment in *Sorrells* v. *United States*, 287 U.S. 435 (1932). The majority in *Sorrells* stated that entrapment exists when the "criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Id.* at 442. The Court added that when a defendant raises the defense of entrapment, the prosecution may introduce evidence of the defendant's predisposition to commit the crime. *Id.* at 451. In his concurring opinion in *Sorrells*, Justice Roberts, joined by Justices Stone and Bran-

deis, criticized the majority's focus on the defendant's predisposition. Since the purpose behind the entrapment defense is to deter improper police conduct, Justice Roberts argued that the focus should be on the behavior of the police, not on the defendant's predisposition:

> To say that [instigation and inducement] by an official of government is condoned and rendered innocuous by the fact that the defendant had a bad reputation or had previously transgressed is wholly to disregard the reason for refusing the processes of the court to consummate an abhorrent transaction.

*Id.* at 459.

The Supreme Court next addressed the entrapment issue in 1958 in *Sherman* v. *United States,* 356 U.S. 369 (1958). A five member majority of the Court adhered to *Sorrells'* "subjective" test, which focuses on the character of the particular defendant to determine whether the entrapment defense is available. However, in a concurring opinion, Justice Frankfurter endorsed Justice Roberts' "objective" view of entrapment, which emphasizes police conduct. Justice Frankfurter, who was joined by Justices Douglas, Harlan and Brennan, pointed out that inquiring into the defendant's predisposition leads to the admission of highly prejudicial hearsay concerning the defendant's reputation and prior criminal activities. Thus, the majority's subjective test causes a defendant either to forego asserting entrapment or run the risk that the jury will improperly consider evidence of prior convictions and bad acts in determining the defendant's guilt or innocence of the specific crime charged. *Id.* at 382. Justice Frankfurter also argued that by concentrating on the defendant's predisposition rather than on the conduct of the police, the subjective test leads to different results depending on the identity of the defendant. Justice Frankfurter objected to this inconsistency:

> Permissible police activity does not vary according to the particular defendant concerned; surely if two suspects have been solicited at the same time in the same manner, one should not go to jail simply because he has been convicted before and is said to have a criminal disposition.

*Id.* at 383. Finally, Justice Frankfurter insisted that the sub-

jective test ignores the reason underlying the defense of entrapment, the deterrence of impermissible police conduct:

No matter what the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society.

*Id.* at 382–83.

The subjective approach was criticized again by Justice Stewart in a dissenting opinion in *United States* v. *Russell*, 411 U.S. 423, 439–50 (1973). Justice Stewart argued that concentrating on the defendant's predisposition is misleading. By committing the offense, the defendant was " 'predisposed' in the sense that he [or she] has proved to be quite capable of committing the crime." *Id.* at 442. The defendant is no less guilty of committing the offense because he or she was induced by government officials rather than by a private individual. Since the defense of entrapment is available if a defendant is induced by the government but is not allowed if the inducement is done by a private person, "it follows that the significant focus must be on the conduct of the government agents, and not on the predisposition of the defendant." *Id.*

Finally, the subjective view of entrapment has been consistently criticized by legal scholars. See, e.g., Cohn, *The Need For An Objective Approach To Prosecutorial Misconduct*, 46 Brooklyn L. Rev. 249 (1979–80) ; Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs*, 60 Yale L.J. 1091 (1951) ; Dunham, *Hampton* v. *United States: Last Rites for the "Objective" Theory of Entrapment?* 8–9 Colum. Hum. Rts. L. Rev. 223 (1976–77) ; Mikell, *The Doctrine of Entrapment in the Federal Courts*, 90 U. Pa. L. Rev. 245 (1942) ; Williams, *The Defense of Entrapment and Related Problems in Criminal Prosecution*, 28 Fordham L. Rev. 399 (1959) ; Note, *Entrapment: Time to Take an Objective Look*, 16 Washburn L.J. 324 (1977) ; Note, *The Serpent Beguiled Me and I Did Eat—The Constitutional Status of the Entrapment Defense*, 74 Yale L.J. 942 (1965).

■ Past decisions of this Court addressing the issue of entrapment did not consider the underlying rationale of entrap-

ment or determine what elements constitute the defense. See *State* v. *Girouard*, 130 Vt. 575, 578, 298 A.2d 560, 562 (1972) ; *State* v. *Dragon, supra*, 130 Vt. at 340, 292 A.2d at 830. We find today that the purpose of the entrapment defense is to deter improper governmental activity in the enforcement of the criminal laws. We also hold, for the reasons articulated by Justices Roberts, Frankfurter and Stewart and described above, that the "objective" test of entrapment is the only approach that is consistent with the underlying purpose of the defense.

A growing number of states have adopted the objective test. See, e.g., *Grossman* v. *State*, 457 P.2d 226 (Alaska 1969) ; *People* v. *Benford*, 53 Cal. 2d 1, 345 P.2d 928 (1959) ; *State* v. *Nakamura*, 65 Hawaii 74, 648 P.2d 183 (1982) ; *State* v. *Mullen*, 216 N.W.2d 375 (Iowa 1974) ; *People* v. *Turner*, 390 Mich. 7, 210 N.W.2d 336 (1973) ; *State* v. *Hoffman*, 291 N.W.2d 430 (N.D. 1980) ; *Commonwealth* v. *Jones*, 242 Pa. Super. 303, 363 A.2d 1281 (1976) ; *Craver* v. *State*, 628 S.W.2d 155 (Tex. Ct. App. 1982).

In addition, many lower federal courts have focused on the governmental officers' conduct rather than on the defendant's predisposition. See, e.g., *Greene* v. *United States*, 454 F.2d 783, 786–87 (9th Cir. 1971) ; *Smith* v. *United States*, 331 F.2d 784, 790, 792 (D.C. Cir. 1964) ; *Williamson* v. *United States*, 311 F.2d 441 (5th Cir. 1962), *aff'd per curiam*, 340 F.2d 612 (5th Cir.), *cert. denied*, 381 U.S. 950 (1965).

We approve of the definition of the objective test articulated in the Model Penal Code:

> A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, [he or she] induces or encourages another person to engage in conduct constituting such offense by . . . employing methods of persuasion or inducement [that] create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

Model Penal Code § 2.13 (1) (b) (Proposed Official Draft 1962).

The final issue to be decided here is whether the objective test should be applied by the court or by the jury. In his concurrence in *Sorrells*, Justice Roberts argued that the trial judge should rule on the issue of entrapment because it is the duty of the courts to prevent "the use of their process to consummate a wrong." *Sorrells, supra,* 287 U.S. at 455. Justice Frankfurter, in his concurring opinion in *Sherman*, agreed with Justice Roberts, adding that jury verdicts on the issue of entrapment do not give police officials guidance for proper conduct in the future: "Only the court, through the gradual evolution of explicit standards in accumulated precedents, can do this with the degree of certainty that the wise administration of criminal justice demands." *Sherman, supra,* 356 U.S. at 385.

Other commentators, however, argue that the issue of entrapment under the objective test should be determined by the jury. The test involves judgments concerning the motivations of people who may not be "ready to commit" such crimes, and juries have "particular claim[s] to competence" in making such judgments. Model Penal Code § 2.10 (2) comment 5 at 22 (Tent. Draft No. 9 1959). In addition, the entrapment defense frequently involves factual conflicts and issues of credibility that are best suited to jury determination. Note, *Entrapment,* 73 Harv. L. Rev. 1333, 1344 (1960); see also Comment, *Administration of the Affirmative Trap and the Doctrine of Entrapment: Device and Defense,* 31 U. Chi. L. Rev. 137, 175–76 (1963).

In adopting the objective test, the Supreme Court of Iowa decided that if there is no dispute as to the facts the trial court should determine as a matter of law whether entrapment exists; however, if a factual dispute exists, the court should submit the issue to the jury. *State* v. *Mullen, supra,* 216 N.W.2d at 382. We approve of this determination and adopt it here.

*Reversed and remanded.*