# State of Vermont v. Raymond R. George

[602 A.2d 953]

No. 88-491

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 13, 1991

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Gayle Middleton*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *Kerry B. De-Wolfe*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Dooley, J.** After trial by jury, defendant was convicted in district court of soliciting a female person for the purpose of prostitution, in violation of 13 V.S.A. § 2632(a)(6). Defendant appeals, claiming (1) the court erred in failing to find police entrapment as a matter of law, and (2) the statute under which he was convicted violates the equal protection guarantees of the United States and Vermont constitutions. We affirm.

Neither party disputes the facts. An informant, Edward Chaloux, reported to a Burlington police detective on February 8, 1988, that defendant had approached him and offered $50 if the informant would find a woman with whom defendant could have sexual intercourse. The detective made arrangements for an undercover operation in which a female police officer would wear an electronic surveillance transmitter while approaching defendant. Sergeant Lianne Tuomey agreed to pose as the woman supplied by the informant and wear a transmitter, and the informant agreed to introduce her to defendant.

That afternoon, the informant brought the sergeant to a place where defendant was waiting and introduced them. Under her clothing, the sergeant wore a microphone that transmitted to a receiving device in a police car some distance away where two detectives visually monitored the interaction between defendant and the sergeant, and listened to and recorded their conversation.

In the discussion that ensued, the sergeant repeatedly asked defendant variations of the question, "What's the deal?" Defendant did not immediately declare that he wanted sex in return for money. When questioned by the sergeant, he said he wanted "good lay, . . . companionship, a little loving." There was quite a bit of further questioning before he said he was prepared to pay for sex—that is, he would give in return "a lot of loving and money." At one point in the conversation, which lasted just over ten minutes, defendant asked the undercover officer, "[y]ou aren't a cop or anything are you?" Ultimately, defendant and the sergeant agreed that they would meet the following morning and defendant would pay "a hundred bucks for the day."

Defendant was arrested at the scene. At the police station, he waived his *Miranda* right to remain silent. During questioning, he admitted that he had been prepared to give money to the undercover police sergeant as payment for sexual intercourse.

At trial, the detective to whom the informant reported and Sergeant Tuomey testified, but the informant, who could not be located by the State, did not. Defendant unsuccessfully moved to dismiss, arguing entrapment and the unconstitutionality of the solicitation statute. The jury heard the evidence, including the tape recordings of the conversation between defendant and the sergeant, as transmitted from the microphone hidden under the sergeant's clothing, and the detective's questioning of defendant at the police station after the arrest. After instruction by the court on the elements of the crime charged, the standard of proof, and the issue of entrapment, the jury found defendant guilty.

The first issue presented for our review is whether the trial court erred when it failed to find entrapment as a matter of law, instead submitting the question to the jury. Entrapment is an affirmative defense. *State v. Wilkins*, 144 Vt. 22, 25, 473 A.2d 295, 296 (1983). Defendant has the burden of establishing it by a preponderance of the evidence. *Id.* In *Wilkins*, we adopted an objective approach for determining whether a defendant has been entrapped. A person involved in law enforcement

> "perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, [he or she] induces or encourages another person to engage in conduct constituting such offense by . . . employing methods of persuasion or inducement [that] create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it."

*Id.* at 29, 473 A.2d at 299 (quoting Model Penal Code § 2.13(1)(b) (Proposed Official Draft 1962)); see also *State v. Zaccaro*, 154 Vt. 83, 94, 574 A.2d 1256, 1263 (1990) (reaffirming objective test of *Wilkins*). Better than the subjective test, which focuses on the defendant's predisposition to commit the crime, the objective standard serves the purpose of the entrapment defense, which is to deter improper governmental activity in law enforcement. *Wilkins*, 144 Vt. at 29, 473 A.2d at 298. Given that

rationale, our approach focuses on the actions of the government. See *Sebesta v. State,* 783 S.W.2d 811, 814 (Tex. Ct. App. 1990) (following similar objective test).

■■ The question of entrapment is ordinarily for the jury. *Wilkins,* 144 Vt. at 30, 473 A.2d at 299. However, the court must determine it as a matter of law when there is no dispute as to the facts. *Id.*; *State v. Merritt,* 149 Vt. 529, 533, 546 A.2d 791, 793 (1988).

Focusing entirely on the transcript of the conversation between him and Sergeant Tuomey, defendant argues that the facts are undisputed and show entrapment to commit the crime charged. Although there was no dispute as to the content of the conversation, or the events that led to it, there was still a dispute as to the facts within the holding of *Wilkins.* The question of entrapment is ordinarily left to the jury because "[t]he test involves judgments concerning the motivations of people who may not be 'ready to commit' such crimes, and juries have 'particular claim[s] to competence' in making such judgments." *Wilkins,* 144 Vt. at 30, 473 A.2d at 299. Our rule that the court should determine whether entrapment exists when there is no dispute as to the facts was taken from *State v. Mullen,* 216 N.W.2d 375, 382 (Iowa 1974). The court made clear in *Mullen* that the entrapment issue must go to the jury even in the case of undisputed facts if there is a dispute as to the inferences to be drawn from them. *Id.*

■ There was a dispute here over the inferences to be drawn from the undisputed facts. The police did not create a trap for the random citizen. Rather, they responded to information they received from an informant that defendant was seeking to commit the crime. Although the sergeant was persistent in her questioning of defendant to elicit the statements later used to prove his guilt, a reasonable juror could find that what she sought was in fact only clarification of the relationship defendant was seeking to establish. Indeed, defendant first made reference to sex, and he raised the subject of money. While the jury was free to find otherwise, the State had a strong case that defendant was not induced by the conduct of the police officers to solicit for prostitution.

The second issue before us is whether defendant's prosecution violates one or both of the Vermont and federal constitutions. The relevant statute reads, in part:

> (a) A person shall not:
>
> . . . .
>
> (6) Procure or solicit or offer to procure or solicit a female person for the purpose of prostitution . . . .

13 V.S.A. § 2632(a)(6). The term "prostitution" is defined to include "the offering or receiving of the body for sexual intercourse for hire." 13 V.S.A. § 2631.

■■ ·Under the Fourteenth Amendment to the United States Constitution, legislation that, without a rational purpose, treats differently classes of persons otherwise similarly situated is unconstitutional. *Smith v. Town of St. Johnsbury*, 150 Vt. 351, 357, 554 A.2d 233, 238 (1988). Where the alleged discrimination is based on gender, courts scrutinize the legislative classification by the higher standard of whether it is "substantially related" to an important and legitimate state interest. See *Craig v. Boren*, 429 U.S. 190, 197 (1976). In order to trigger equal protection analysis at all, however, a defendant must show that he was treated differently as a member of one class from treatment of members of another class similarly situated. See *State v. Handley*, 115 Wash. 2d 275, 289–90, 796 P.2d 1266, 1274 (1990) (equal protection scrutiny invoked in looking at defendant's sentencing in comparison with co-defendant's sentencing only if defendant and co-defendant were similarly situated yet treated differently because of membership in a class).

Defendant argues that the statute discriminates against heterosexual males, because it proscribes solicitation only of a female for prostitution by a male. He asserts that it cannot be used to prosecute females or homosexual males for solicitation of males, nor females for soliciting females since the statutory definition of prostitution denotes intercourse and not other sexual acts.

■■ Some of the force of defendant's argument is eliminated by a proper construction of the statute. In construing a statute, we look first to the plain meaning of the words used. *In re Graziani*, 156 Vt. 278, 282, 591 A.2d 91, 94 (1991). The prohi-

bition of § 2632(a)(6) extends to any "person" without regard to gender. Thus, "any person," either male or female, can be prosecuted for what defendant is alleged to have done: soliciting a female for prostitution. In view of the plain meaning of the statute, we do not accept defendant's argument that only a male can be prosecuted under § 2632(a)(6). See *State v. Stevens*, 510 A.2d 1070, 1071 (Me. 1986). On its face, the statute treats all potential offenders alike irrespective of gender.

■■ We realize that there are gaps in the statutory prohibition of § 2632(a)(6). The statute cannot be used to prosecute defendants of either gender who solicit a male for the purpose of prostitution. Nor can a female be prosecuted for soliciting a female for prostitution for herself, although she can be prosecuted for soliciting a female for prostitution with another.

The gaps in the statutory scheme may be more apparent than real. Prostitution itself is defined in a gender-neutral fashion. 13 V.S.A. § 2631. As a result, prostitution by any person, male or female, is prohibited by § 2632(a)(8) and aiding or abetting prostitution, irrespective of the gender of the aider or abetter or the person who engages in prostitution, is prohibited by § 2632(a)(9). Thus, the exact conduct that occurred here appears to violate §§ 2632(a)(8) and (a)(9) if the person who engages in prostitution is a male.

In any event, the discrimination, if it exists at all, involves only the class of persons being protected by the statute. While prostitution by anybody is prohibited, solicitation of a female is directly and specifically prohibited, while solicitation of a male is not.

■ Thus, defendant is left with the argument that because the statute fails to proscribe solicitation of males for prostitution, it cannot constitutionally be applied to defendant for solicitation of a female. We have held, however, that "a criminal statute enacted for the protection of a particular class is not unconstitutional simply because the specified class is not all-inclusive or might have been so enlarged as to include others equally meriting the same protection." *State v. Shady*, 100 Vt. 404, 405, 138 A. 777, 777 (1927); see also *Agency of Environmental Conservation v. Casella*, 142 Vt. 503, 506, 457 A.2d 633, 635 (1983) (determinations of whom to prosecute are discretion-

ary). If there is a class discriminated against here, it is males who engage in prostitution. As applied to defendant, the statute violates neither the federal nor the Vermont constitution because he is treated under the statute the same as any similarly situated offender. He will not be insulated from prosecution for perpetration of one type of crime involving a particular protected class, simply because the Legislature has not extended the criminal prohibition to similar conduct directed at another class.

Other courts have addressed analogous issues. Some hold that a statute which prohibits only members of one gender from sex-related conduct that could be committed by either gender is unconstitutional on equal protection grounds. Rather than reversing conviction under the statute, however, they read the statute without the unconstitutional discriminatory language and apply it in a gender-neutral fashion. See, e.g., *Plas v. State*, 598 P.2d 966, 968–69 (Alaska 1979) (clause "by a female" rendered prostitution prohibition statute unconstitutional but could be severed by the court, leaving a gender neutral law); see also *People v. Liberta*, 64 N.Y.2d 152, 171–72, 474 N.E.2d 567, 578–79, 485 N.Y.S.2d 207, 218–19 (1984) (statute proscribing forcible rape of females by males was unconstitutional on equal protection grounds, but court would extend coverage to rape of males by females, thus making statute gender neutral). We decline to follow this approach, preferring to leave to the Legislature the task of reforming a statute to criminalize conduct not presently prohibited. We note, however, that if this statute were gender neutral, as defendant argues it is constitutionally required to be, he could still have been prosecuted.

Yet other courts have held that the perpetrator of a crime against a member of one victim class has no standing to assert what is actually the constitutional right of members of an unprotected victim class. See, e.g., *United States v. Bankston*, 603 F.2d 528, 534 (5th Cir. 1979) (defendant had no standing to assert unconstitutionality of federal Mann Act, proscribing transportation of females for purposes of prostitution, because "he [was] not an unprotected male victim of an interstate transportation . . . ."); *People v. Rocha*, 110 Mich. App. 1, 16–18, 312 N.W.2d 657, 664–65 (1981) (defendant alleged to have pandered a female lacked standing to assert, on the ground that it pro-

vided greater protection to women, unconstitutionality of statute prohibiting pandering only of females). The problem with the standing rationale is that if the person prosecuted under the allegedly discriminatory statute has no standing, it is unclear who would have standing, if, indeed, the statute is unconstitutional. A criminal defendant should generally have standing to assert the unconstitutionality of a statute that, if applied to his conduct, would result in his conviction and punishment.

■ Defendant also asserts that § 2632(a)(6) violates Chapter I, Article 7 of the Vermont Constitution. We have held that the standard applicable to Article 7 is similar to that used under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Thus, unless a "fundamental right or suspect class is involved," a statute comports with Article 7 if it is reasonably related to a legitimate public purpose. *Choquette v. Perrault*, 153 Vt. 45, 52, 569 A.2d 455, 458 (1989). We need not decide here whether gender discrimination cases will be treated the same under Article 7 as the United States Supreme Court has treated them under the Equal Protection Clause. We see no reason to deviate in Article 7 cases from the rule that an offender cannot challenge the Legislature's choice of a protected class on the basis that it discriminates against him. There is no violation of Article 7 as to this defendant.

■ We hold, then, that 13 V.S.A. § 2632(a)(6) is not unconstitutional as applied to this defendant, since his "equal protection" under the law is not being violated. We leave for another day whether the statute is unconstitutional because it is underinclusive, and whether there is a party who can make such a claim, because those issues are not before us.

*Affirmed.*