NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 65

No. 2020-176

In re Laura Hernandez

Supreme Court

On Appeal from
Superior Court, Washington Unit,
Civil Division

February Term, 2021

Timothy B. Tomasi, J.

Matthew F. Valerio, Defender General, and Annie Manhardt, Prisoners' Rights Office,
  Montpelier, for Petitioner-Appellant.

Thomas J. Donovan, Jr., Attorney General, and Earl F. Fechter, Assistant Attorney General,
  Montpelier, for Respondent-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **CARROLL, J.** Petitioner appeals a civil division order granting the State summary judgment in response to her petition for post-conviction relief (PCR), which alleged ineffective assistance of trial counsel. We conclude that the undisputed facts demonstrate that any error by counsel did not prejudice defendant and therefore affirm.

¶ 2. The following facts were undisputed for purposes of summary judgment. In December 2006, petitioner was charged with two counts of selling or distributing heroin in violation of 18 V.S.A. § 4233(b)(2). The charges were based on two sales of heroin by petitioner to an informant. Petitioner's first counsel was assigned in January 2007. The parties executed a discovery stipulation, requiring all affirmative defenses, including entrapment, to be noticed within ten days of the close of depositions. In September 2007, petitioner's first counsel withdrew and

new counsel, Attorney Kolitch, was assigned. The parties engaged in extensive discovery, including depositions of various witnesses. Defendant did not notice any affirmative defenses.

¶ 3. On the first day of trial, in January 2009, Attorney Kolitch filed proposed jury instructions and in that proposal requested an entrapment instruction for the first time. The State objected to the proposed instruction on the basis that defendant had not timely asserted the defense in accordance with the parties' scheduling order. The State argued that the late notice would prejudice the State because it had not had time to adequately prepare evidence or witnesses to respond to such a defense. The State also argued that there was insufficient evidence to support the defense. The court ultimately declined to instruct on entrapment, concluding that defendant had not made a timely request in accordance with the parties' stipulation and that this delay prejudiced the State.

¶ 4. At trial, the State presented the testimony of the informant, who testified as follows. Petitioner and the informant were good friends and spoke frequently. They did favors for each other. The informant took legal and illegal drugs for chronic pain. Prior to the drug sales that led to the charges against defendant, the informant told petitioner that she was in extreme pain and called multiple times a day asking petitioner to help her out. The informant denied that she was begging or pressuring petitioner into providing illicit drugs. Petitioner did not present any evidence at trial.

¶ 5. During deliberations, the jury sent a question to the court asking whether it should consider whether petitioner was pressured by the informant to sell. The court answered: "You may consider the evidence of whether or not the defendant was pressured by the confidential informant and the terms of [the Informant Agreement] the same as you consider all other evidence." The jury found petitioner guilty.

¶ 6. Petitioner filed a motion for a new trial, arguing that the court erred in declining to instruct on the entrapment defense. The court denied the motion, concluding again that petitioner's

request was untimely and that the late notice was prejudicial to the State. In addition, the court concluded that, in any event, the evidence did not support an instruction on entrapment. Petitioner was sentenced and then filed a motion for sentence reconsideration. Before that motion was resolved, petitioner entered a plea agreement resolving this and other cases. As part of the plea, petitioner agreed to withdraw her motion for sentence reconsideration and to give up all rights of appeal in connection with the criminal charges involved in the plea agreement.

¶ 7. In 2018, petitioner filed this PCR, arguing that Attorney Kolitch provided ineffective assistance of counsel in her criminal case by failing to timely raise an entrapment defense and to make constitutional arguments in support of allowing an instruction despite the late notice, and that she was prejudiced by Attorney Kolitch's failures. Both parties filed motions for summary judgment. The State argued that the facts did not support a prima facie case for ineffective assistance and that petitioner's claims had been intentionally bypassed when petitioner elected not to appeal from her criminal conviction.

¶ 8. The PCR court acknowledged that, typically, ineffective-assistance claims are not waived by failing to raise them on appeal. The court concluded, however, that in this case petitioner's claim of ineffective assistance was intertwined with the legal argument regarding the entrapment instruction insofar as petitioner alleged that Attorney Kolitch failed to meet professional standards by not raising the entrapment defense in a timely manner consistent with the scheduling stipulation. Because the question of whether the evidence warranted an instruction was central to whether the late notice prejudiced petitioner, the PCR court concluded that petitioner had deliberately bypassed her ineffective-assistance claim by waiving her right to appeal and contest the legal question of whether the evidence was sufficient to support an entrapment defense. Therefore, the court granted the State summary judgment. Petitioner filed this appeal.

¶ 9. This Court reviews a summary-judgment decision without deference to the trial court and applies the same standard as the trial court. In re Barrows, 2007 VT 9, ¶ 5, 181 Vt. 283,

3

917 A.2d 490. Summary judgment will be granted when the undisputed material facts show that a party is entitled to judgment as a matter of law. V.R.C.P. 56(a). A PCR provides a limited remedy to collaterally challenge a criminal conviction. See 13 V.S.A. § 7131 (providing prisoners with opportunity to challenge legality or constitutionality of sentence). A PCR is not a substitute for a direct appeal. In re Laws, 2007 VT 54, ¶ 9, 182 Vt. 66, 928 A.2d 1210 (explaining scope of PCR challenge). Therefore, "[a] PCR may not raise an issue that was litigated in the criminal trial but deliberately bypassed on direct appeal." Id. ¶ 10. The deliberate-bypass doctrine applies to issues raised at trial and not argued on appeal unless the petitioner shows that the failure to raise the issue on appeal "was inadvertent, that appellate counsel was ineffective, or that extraordinary circumstances excused the failure to raise the issues on appeal." In re Nash, 149 Vt. 63, 64, 539 A.2d 989, 990 (1987). In general, deliberate bypass does not apply to ineffective-assistance claims because they may not be raised in a direct appeal. See State v. Lund, 168 Vt. 102, 105, 718 A.2d 413, 415 (1998) (explaining that claim for ineffective assistance of counsel "must be raised, if at all, in the context of a petition for post-conviction relief").

¶ 10. In this case, the trial court concluded that although deliberate bypass did not directly apply, petitioner's ineffective-assistance claim could not be raised because it was so intertwined with her argument regarding the lack of an entrapment instruction. We do not reach the deliberate-bypass or waiver arguments because we conclude that the undisputed facts do not support a prima facie claim for ineffective assistance.

¶ 11. The standard for ineffective assistance of counsel is as follows:

> To demonstrate ineffective assistance of counsel, a petitioner must show by a preponderance of the evidence that: (1) his counsel's performance fell below an objective standard of performance informed by prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the proceedings would have resulted in a different outcome.

In re Grega, 2003 VT 77, ¶ 7, 175 Vt. 631, 833 A.2d 872 (mem.).

4

¶ 12. Here, even if petitioner could prove the first part of the test—that her counsel acted below an objective standard of performance in failing to timely request an entrapment instruction—petitioner has failed to allege facts that support the second part of the ineffective-assistance test. The undisputed facts demonstrate that there was insufficient evidence presented at trial to warrant an entrapment instruction and therefore petitioner cannot show that counsel's alleged error affected the result at trial.

¶ 13. Entrapment is an affirmative defense which a defendant has the burden to establish by a preponderance of the evidence. State v. George, 157 Vt. 580, 583, 602 A.2d 953, 955 (1991). The test for entrapment is objective and requires a showing that a person involved with law enforcement induced or encouraged the defendant to engage in the offense by "employing methods of persuasion or inducement that create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." Id. (alteration omitted) (quotation omitted). Under the objective test, a particular defendant's reputation or predisposition to criminal activity is not relevant. See State v. Wilkins, 144 Vt. 22, 27, 473 A.2d 295, 297-98 (1983). The focus is on police conduct and its probable effect on a reasonable person. See George, 157 Vt. at 583, 602 A.2d at 955 (explaining elements of entrapment defense).

¶ 14. To be entitled to an instruction on an affirmative defense, a defendant "must establish a prima facie case on each of the elements of the defense asserted." State v. Knapp, 147 Vt. 56, 59, 509 A.2d 1010, 1011 (1986). If the evidence does not support a prima facie case, then the defendant is not entitled to an instruction on entrapment at all. When the facts do support a prima facie case for entrapment and there are factual disputes, the issue is a matter for the jury to decide. Wilkins, 144 Vt. at 30, 473 A.2d at 299. If, however, there is a prima facie case and there is no dispute about the facts, the trial court must determine whether entrapment exists as a matter of law. Id.

5

¶ 15.    Here, petitioner did not present a prima facie case for entrapment and therefore she was not entitled to an entrapment instruction. Even viewing the evidence in a light most favorable to petitioner, the evidence does not show that law enforcement used methods of persuasion or inducement so extreme that those actions created a substantial risk that an otherwise honest, law-abiding citizen would be ensnared in wrongdoing.[1] As set forth in more detail below, the evidence shows that the informant was friends with petitioner, several times asked petitioner for drugs, and that petitioner knew the informant sought the drugs to relieve her pain. These are not unusual or extreme circumstances which provide enough evidence to meet the elements of a prima facie case of entrapment and entitle petitioner to an instruction in her criminal trial.

¶ 16.    The charges in this case were based on two heroin sales by petitioner to a confidential informant. Because petitioner did not present any evidence in the criminal trial, the only evidence came through the State's witnesses, most importantly the confidential informant. The undisputed facts and portions of transcript submitted in the PCR proceeding indicate as follows. The informant testified that she and petitioner were good friends and spoke frequently in the months prior to the drug sales. If petitioner was not available, the informant often left messages for petitioner and sometimes petitioner did not return the calls. Petitioner knew that the informant suffered from chronic pain and had post-traumatic stress disorder. Petitioner also knew that the informant took drugs to relieve her physical pain. In the two days leading up to the first drug sale, the informant called defendant six to eight times each day and left messages for defendant, stating that she needed something for the pain and asking defendant for help. The informant testified that she might have left a message with petitioner telling her "You gotta help me out. You gotta get

---

[1] Because this is an appeal from a PCR proceeding and not a direct appeal, the "record" is limited. The question is whether the undisputed facts in the PCR proceeding show that there was evidence to support a prima facie case of entrapment and thus the court was required to give an entrapment instruction. In determining this issue, we accept as true all facts as alleged if supported by affidavits or other evidentiary material. Morisseau v. Hannaford Bros., 2016 VT 17, ¶ 12, 201 Vt. 313, 141 A.3d 745. The entire trial transcript was not entered into the summary-judgment record and our review is confined to the assertions and evidence submitted below.

me something." Not all of the informant's telephone calls were recorded and law enforcement was not aware of what the informant told defendant during the telephone calls or messages. The informant denied that her repeated telephone calls and messages were "begging, luring, [or] pressuring" petitioner[2] because of the relationship between the informant and petitioner. The informant testified that she and petitioner were close friends, and they had a habit of calling each other dozens of times a day to chat and would leave messages if the other person did not answer. The informant explained that the number of calls and the content of the conversations in the days before the drug sales were not unusual for her and petitioner.

¶ 17. The informant arranged to buy heroin from petitioner on two occasions. During the first controlled buy, the informant arranged to buy heroin from petitioner at a residence. An undercover officer drove her to the arranged meeting spot. Petitioner provided the informant with drugs, and then the informant introduced petitioner to the undercover officer. The second controlled buy occurred a few days later and was for twenty bags of heroin. The informant and the undercover officer met petitioner at a church. Petitioner had only fifteen bags of heroin. She gave ten bags to the informant and the other five bags of heroin to the undercover officer after the officer paid her for them. During each sale, petitioner provided 200 milligrams or more of heroin.

¶ 18. As indicated above, this Court has adopted the objective test for entrapment as articulated in the Model Penal Code. Wilkins, 144 Vt. at 29, 473 A.2d at 299. This test focuses on the conduct of the State, inquiring whether a law-enforcement officer, or those cooperating with law enforcement, induced or encouraged another person to engage in criminal conduct through persuasion or inducement that creates "a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." Id. (quoting Model Penal Code § 2.13(1)(b)). Other jurisdictions that use an objective test for entrapment have considered various

---

[2] The informant had an agreement with law enforcement that she would not beg, pressure, or lure anyone.

factors in assessing whether there is evidence of entrapment, including whether law enforcement used "continued pressure, appeals to friendship or sympathy, threats of arrest, an informant's vulnerability, sexual favors, or procedures which escalate criminal culpability." People v. Jamieson, 461 N.W.2d 884, 895-96 (Mich. 1990) (footnotes omitted); see People v. Gossett, 97 Cal. Rptr. 528, 529 (Ct. App. 1971) (concluding that trial judge did not have duty to instruct on entrapment where "an agent of the police uses no more persuasion than is incident to any ordinary sale, and defendant, the seller, is ready, willing and able to furnish a narcotic substance"); Commonwealth v. Stokes, 400 A.2d 204, 206 (Pa. Super. Ct. 1979) ("There is no entrapment where, as here, the police conduct, viewed objectively, did no more than afford appellant an opportunity to make a sale of heroin."). The focus is on whether police have created a substantial risk that the offense will be committed by one who is innocently disposed.

¶ 19.   In this case, petitioner contends that there was sufficient evidence of entrapment because the informant called petitioner six to eight times in the two days before the first sale and asked for drugs, knowing that petitioner was aware of the informant's physical pain. The dissent also concludes that there was sufficient evidence to warrant an instruction on entrapment given petitioner's friendship with the informant and the informant's appeal to petitioner's sympathy. The dissent suggests that different inferences can be drawn from the informant's testimony about the calls, creating a dispute of fact to be decided by the jury. We conclude that, even viewing the informant's testimony in a light most favorable to petitioner, the evidence did not establish a prima facie case of entrapment.

¶ 20.   In looking at the evidence, even in the light most favorable to petitioner, the facts regarding friendship and sympathy in this case simply do not rise to the level of persuasion or coercion required to demonstrate a prima facie case of entrapment. An entrapment instruction is not warranted in every situation where there is some remote possibility that the acts of the police or their agents contributed to the commission of the crime. Entrapment occurs when the acts of

8

inducement or persuasion create "a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." Wilkins, 144 Vt. at 29, 473 A.2d at 299 (emphasis added) (quotation omitted). At most, the evidence showed that the informant and petitioner were friends, the informant attempted to contact petitioner several times, which was customary in their relationship, and the informant appealed to petitioner's sympathy. These circumstances do not create a "substantial risk" that petitioner committed an offense she was not otherwise inclined to commit.

¶ 21. Other cases finding enough evidence for entrapment based on friendship or sympathy involve much more extreme examples of inducement, including repeated requests after the defendant declines or is reluctant to participate, and evidence that a close relationship or emotional situation persuaded or induced the criminal activity. For example, in a prosecution for possession of heroin with intent to sell, the appellate court concluded that the trial court committed reversible error in refusing to instruct on entrapment where the police secured the release of the defendant's girlfriend, an addict, from prison in exchange for her assistance as a confidential informant, the girlfriend made repeated unsuccessful efforts to obtain heroin from the defendant, and she finally received a small amount from the defendant after asking for heroin as a birthday present. Weaver v. State, 370 So. 2d 1189, 1190-91 (Fla. Dist. Ct. App. 1979); see People v. Alexander, 619 N.E.2d 863, 870 (Ill. App. Ct. 1993) (holding that defendant was entitled to entrapment instruction in cocaine prosecution where police and paid agent initiated drug deal, agent used considerable coercion to overcome defendant's reluctance to become reinvolved with drug world, and defendant made no profit from drug deal); People v Juillet, 475 N.W.2d 786, 798 (Mich. 1991) (holding that entrapment defense was established where defendant, who used but did not sell drugs, was persuaded by incessant requests by police agent, who made incredible appeals to their friendship, to engage in drug transaction); Commonwealth v. Lucci, 662 A.2d 1, 8 (Pa. Super. Ct. 1995) (holding that facts supported entrapment as matter of law where police informant

contacted defendant less than two weeks after defendant completed drug rehabilitation, informant approached defendant repeatedly, appealed to friendship with defendant and defendant's sympathy over death of informant's mother, and informant instigated all transactions).

¶ 22. Here, the summary-judgment record does not include evidence of inducement or persuasion that would warrant an entrapment instruction. The content and number of the telephone calls and the facts surrounding the sales are not sufficient in this case to demonstrate the kind of undue persuasion or coercion necessary to warrant an instruction on entrapment. The number of call attempts alone is not enough to show undue persuasion. There was no evidence that the repeated calls were necessary because petitioner avoided the informant's calls, petitioner initially declined to sell, or petitioner was reluctant to sell to the informant. Undue persuasion means more than "repeated requests for contraband goods." Murrell v. State, 304 S.E.2d 408, 408 (Ga. Ct. App. 1983). Considering all of the undisputed facts describing the circumstances surrounding the sales, the informant's several attempts to contact petitioner, without any indication that these repeated attempts were triggered by petitioner's initial refusal or reluctance, do not provide sufficient evidence of inducement to commit a criminal act.

¶ 23. Moreover, in the context of the undisputed evidence regarding the existing relationship between the informant and petitioner, the repeated telephone calls were not coercive. The undisputed evidence showed that the informant regularly called frequently because petitioner did not always answer her telephone and that the informant and petitioner were in the habit of talking to each other dozens of times a day. In addition, the informant called frequently because she did not always reach petitioner. There was no evidence that petitioner attempted to avoid the informant's communications or expressed an intent not to communicate with the informant. The informant's actions did not rise to the level of inducement or encouragement that created a substantial risk that petitioner would supply drugs if not already willing to do so. See State v. Hayes, 170 Vt. 618, 620, 752 A.2d 16, 19 (2000) (mem.) (affirming trial court's decision not to

10

instruct on entrapment where informant "merely provided the opportunity" for defendant to supply drug).

¶ 24. The dissent asserts that considering whether petitioner was reluctant to provide drugs to the informant is not a fact that should be considered under our objective test for entrapment. As indicated above, in contrast to the subjective test, which focused on a defendant's predisposition to commit a new crime, the objective test for entrapment focuses primarily on the investigative and evidence-gathering procedures used by the governmental agents. Wilkins, 144 Vt. at 29, 473 A.2d at 299. The objective test precludes reliance on a defendant's criminal history to infer a willingness to commit a crime again. The objective test does not require, however, that the circumstances surrounding the crime should be ignored.[3] This information is important in evaluating whether law enforcement acted coercively under the circumstances of the case. As to cases involving drug sales and informants, courts have looked at the tactics of police in relation to the defendant's actions, the quality of the relationship between the defendant and the informant,

---

[3] Although it is nonprecedential, the unpublished order of this Court in State v. Atwood, No. 2016-203, 2017 WL 2963080 (Vt. June 26, 2017) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo16-203_1.pdf, well illustrates the importance of considering the circumstances of the crime, including the defendant's behavior in response to police action, in evaluating whether there is a prima facie case of entrapment. In that case, the defendant was charged with luring a child after he arranged online to meet with a person he believed to be thirteen, but who was in fact a police officer. In evaluating the defendant's motion to dismiss based on entrapment, the trial court considered the fact that the defendant had initiated communication online about sex. On appeal, the defendant argued that the trial court incorrectly applied a subjective test by considering that the defendant had initiated the discussion of sex. This Court affirmed and explained:

> Although the [entrapment] test focuses on police conduct, the critical question is whether the police employed methods of persuasion or inducement creating a substantial risk that defendant would commit a crime that he was otherwise not ready to commit. In answering this question, courts may examine a defendant's communications and conduct while interacting with government agents with respect to the circumstances of the charged offense, which is what the court did here.

Id. at *3.

11

and the defendant's response to the requests for drugs to ascertain whether the police action improperly encouraged or induced criminal activity. See People v. Matthews, 371 N.W.2d 887, 892-93 (Mich. Ct. App. 1985) (evaluating whether entrapment occurred by looking at quality of relationship between informant and defendant and considering defendant's initial refusal to sell). To determine whether law enforcement employed improper persuasive tactics, it is important to understand how the initial request to sell was received and whether law enforcement or an agent of law enforcement continued to persuade or pressure the defendant even in the face of reluctance or refusal. Indeed, the cases detailed by the dissent all examine the particulars of the relationship between the informant and the defendant as well as whether the defendant's behavior indicated a willingness to sell.

¶ 25.    Here, defendant failed to provide evidence of a prima facie case of entrapment. Consequently, the summary-judgment record indicates that, even if petitioner's trial counsel had made a timely request for an entrapment instruction, petitioner would not have been entitled to the instruction. Therefore, petitioner failed to prove that, even if counsel's performance was ineffective, there was a reasonable probability that without the error there would have been a different outcome at trial.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 26.    **ROBINSON, J., dissenting.**    Because I conclude that there was sufficient evidence of entrapment in connection with petitioner's underlying prosecution to submit the question to the jury, I respectfully dissent. Even applying the objective test that we have adopted in Vermont, the question of entrapment is ordinarily left to the jury unless there is no dispute as to the facts or the inferences to be drawn from them. In this case, a jury could have concluded based

12

on the confidential informant's close friendship with petitioner, her appeals to sympathy, and her persistence in calling petitioner, that the government's methods created a substantial risk that an offense would be committed by someone who was not otherwise ready to commit it. The majority's conclusion to the contrary fails to recognize that a jury could conclude that the baseline frequency of informant's contact with petitioner supports the entrapment defense, and relies on petitioner-specific considerations that are not proper considerations in determining whether petitioner was entitled to a jury instruction. I elaborate on these considerations below.

¶ 27. The question of entrapment is ordinarily one for the jury. State v. George, 157 Vt. 580, 584, 602 A.2d 953, 955 (1991). Because Vermont has adopted an objective test for evaluating entrapment—a test that focuses objectively on the conduct of law enforcement rather than on the subjective state of mind of the individual defendant—this proposition is not obvious. As we recognized in State v. Wilkins when we first adopted the objective test, judges and commentators have taken a range of positions as to whether the objective test should be applied by the court or the jury. 144 Vt. 22, 30, 473 A.2d 295, 299 (1983). Some have argued that in order to give law enforcement guidance as to the line between legitimate enforcement strategies and entrapment, judges, not juries, should decide entrapment questions. Id. (citing Sorrells v. United States, 287 U.S. 435, 455 (1932) (Roberts, J., concurring), and Sherman v. United States, 356 U.S. 369, 385 (1958) (Frankfurter, J., concurring)). Others have argued that juries are well-suited to evaluate whether conduct is likely to induce people who are not otherwise "ready to commit" crimes to do so, and that "the entrapment defense frequently involves factual conflicts and issues of credibility that are best suited to jury determination." Id. (citing Model Penal Code § 2.10(2) cmt. 5 at 22 (Tent. Draft No. 9 1959) and Note, Entrapment, 73 Harv. L. Rev. 1333, 1344 (1960)).

¶ 28. In George, this Court squarely aligned with the latter view, explaining, "The question of entrapment is ordinarily left to the jury because [t]he test involves judgments concerning the motivations of people who may not be 'ready to commit' such crimes and juries

have 'particular claim[s] to competence' in making such judgments." 157 Vt. at 584, 602 A.2d at 955 (quotation omitted). Although, as the majority notes, we held in Wilkins that the court should determine whether entrapment exists when there is no dispute as to the facts, 144 Vt. at 30, 473 A.3d at 299, we clarified in George that "the entrapment issue must go to the jury even in the case of undisputed facts if there is a dispute as to the inferences to be drawn from them," 157 Vt. at 584, 602 A.2d at 955. In George, the facts themselves were not in dispute; the conversation between defendant and the undercover law-enforcement officer whom he allegedly solicited for the purpose of prostitution had been recorded and was played for the jury. But this Court ruled that the trial court did not err in declining to find entrapment as a matter of law because it concluded that a reasonable jury could find that the police officer's persistent questioning of defendant which elicited his incriminatory statements was merely designed to clarify the relationship he was seeking to establish. Id. George, rather than Wilkins, reflects the current state of our law concerning the roles of judge and jury with respect to an entrapment defense.

¶ 29.    Not every claim of entrapment is for the jury to decide. There may be cases in which a court can determine as a matter of law that law enforcement conduct amounted to entrapment. See, e.g., Commonwealth v. Wright, 578 A.2d 513, 519, 523 (Pa. Super. Ct. 1990) (recognizing that whether entrapment has occurred is usually question for jury, but concluding based on undisputed evidence that police conduct amounted to entrapment as matter of law). And, as with any other defense, judges must decide whether a defendant has identified sufficient evidence to warrant a jury instruction on entrapment. See, e.g., State v. Hayes, 170 Vt. 618, 619-20, 752 A.2d 16, 19 (2000) (mem.) (upholding trial court's dismissal of entrapment defense where there was no evidence that informant to whom defendant agreed to sell marijuana had employed any method of inducement to create risk that someone not ready to supply him with marijuana would do so); State v. Merritt, 149 Vt. 529, 533, 546 A2d 791, 793 (1988) (affirming trial court's refusal to instruct jury regarding entrapment where officer encountered obviously intoxicated

driver parked at rest area, warned driver not to drive before sobering up, and left). But in general, where there is evidence that could support but does not compel the conclusion that entrapment existed, the entrapment determination should be left to the jury. See, e.g., State v. Vanderlas, 145 Vt. 135, 138, 483 A.2d 263, 265 (1984) (holding that evidence that police, knowing defendant was drunk, drove her to her car in dark and deserted parking lot near her place of employment, left her alone, and told her not to drive for two hours was sufficient to raise question of entrapment for the jury).

¶ 30. Here, there was sufficient evidence that the police informant used tactics associated with entrapment to raise the question for a jury to decide. Courts have recognized that appeals to friendship and sympathy are among the inducements that may amount to entrapment. See Bruce v. State, 612 P.2d 1012, 1014 (Alaska 1980) (affirming trial court's dismissal of entrapment defense where undercover police officer "did not have a close personal friendship with [defendant] which he could have exploited for the purpose of inducing the defendant's participation" and did not "make repeated appeals to the defendant's sense of obligation or sympathy"); People v. Johnson, 647 N.W.2d 480, 498 (Mich. 2002) (applying objective test and listing factors to consider in determining whether governmental activity would impermissibly induce criminal conduct, including "whether there existed appeals to the defendant's sympathy as a friend"); State v. Nagel, 279 N.W.2d 911, 916 (S.D. 1979) (identifying, in context of subjective test for entrapment, "(1) Appeals to friendship; (2) Sympathy; (3) Offers of excessive amounts of money; and (4) Appeal to a narcotic's need" as the "four principal inducements which may locate the intent in the government rather than the accused").

¶ 31. In some cases, tactics that leverage a friendship to induce criminal conduct can amount to entrapment as a matter of law. For example, in Wright, a confidential informant cultivated a friendship with a defendant in order to get the defendant to buy marijuana for him. 578 A.2d 513. In concluding that defendant was entrapped as a matter of law, the court reasoned:

15

We are guided by our statements . . . that impermissible police activity may include appeals to friendship. Here, [informant] feigned friendship with [defendant] in order to manipulate him into purchasing marijuana as a favor to [informant]. [Informant], acting in cooperation with the police, induced and encouraged [defendant] to purchase the marijuana for him. This inducement and encouragement was accomplished by [informant's] deception of [defendant]. [Informant] purposefully appealed to [defendant] as a friend and [defendant] responded to [informant's] requests for favors as would any friend. For "to friendship every burden's light." The police, acting through [informant], induced [defendant's] conduct by fabricating the stories [informant] told [defendant] in order to lead [defendant] to believe that [informant] himself could not purchase the marijuana. [Informant's] appeals to friendship constituted methods of persuasion which created a substantial risk that [defendant] would, solely as a favor to [informant], purchase the marijuana.

Id. at 521-22 (footnote omitted). The dissenting judge did not express any doubt that this evidence could support an entrapment defense but would have left the issue of entrapment to the jury. Id. at 523 (Cavanaugh, J., dissenting). Similarly, in a case cited by the majority, the court found entrapment as a matter of law. See Commonwealth v. Thompson, 484 A.2d 159, 166 (Pa. Super. Ct. 1984).

¶ 32. Here, as the majority acknowledges, the record reflects that the government's cooperating informant was "quite good" friends with petitioner. The informant testified, "Our phones were almost glued to our ears. That's how tight we had gotten. I mean it wasn't, you know, two or three times a day we talked. We talked dozens of times a day." There were times when the informant explained to petitioner that on account of her physical disabilities, she was in such extreme pain that she had difficulty getting around. At the time of the informant's calls to petitioner, the informant had been talking with petitioner about how much pain she was in. The evening before the drug buy underlying the charges against petitioner, her close friend (the informant) phoned her and left messages six to eight times, and on the day of the buy, the friend/informant called petitioner and left messages another six to twelve times. In her messages, the informant conveyed that she was in a lot of pain and it was extremely important for petitioner

16

to get hold of her to help her. In one message she said, "I need you to come through for me. Please call me." In another, she said, "Please, please call me. This is urgent. You've got to call me." She testified that she "could have very well" have left a message saying, "You gotta help me out. You gotta get me something." A jury could reasonably conclude that these repeated, urgent messages from a very close friend in intense pain calling upon petitioner to "come through for me" and "help me out" constitute the kind of inducement that creates "a substantial risk that . . . an offense will be committed by persons other than those who are ready to commit it." George, 157 Vt. at 583, 602 A.2d at 955 (quotation omitted).

¶ 33. The majority's contrary reasoning is unpersuasive because the informant's testimony concerning the frequency of their daily telephone conversations could reinforce rather than undermine the coercive nature of her pleas for help by corroborating the intensity of the defendant's friendship with the informant at the time of the informant's desperate appeals. The evidence could suggest that the informant pleading for defendant's help was not just a casual acquaintance, but was a close friend with whom defendant had daily contact. Ultimately, the significance of the baseline frequency of contact between defendant and informant is a question for the jury, but the fact that the informant had an established pattern of frequent contact with defendant does not preclude a reasonable jury from concluding that the State's conduct here amounted to entrapment.

¶ 34. Likewise, the majority's assertions that there was no evidence that petitioner was reluctant, and that she provided drugs right away when she arrived for the drug buy, improperly shift the focus from the conduct of law enforcement, and the informant they relied upon to entice petitioner to sell drugs, to petitioner's own inclination—a shift that would make sense if Vermont followed the "subjective test" in assessing entrapment defenses, but that is inconsistent with the objective test we have adopted. See id. at 583-84, 602 A.2d at 955 (explaining that subjective test

focuses on defendant's predisposition to commit crime, in contrast to objective test, adopted by this Court, which focuses on actions of government).

¶ 35.    Finally, the cases cited by the majority support petitioner's case by reinforcing that inducing criminal activity through urgent appeals to an individual's friendship and sympathy can constitute entrapment.  Applying an objective test, the Michigan Supreme Court concluded as a matter of law that the defendant had been entrapped where a police informant cultivated a friendship with the defendant, did favors for him, took him out to eat, hosted him as a guest in the informant's home, and repeatedly sought to acquire drugs from or through him.  People v. Juillet, 475 N.W.2d 786, 798-99 (Mich. 1991).  The court concluded that even though the friendship did not cover a period of years, the informant and defendant saw each other on a daily basis for several months, and the record supported the defendant's claim that the informant appealed to his friendship.  Id. at 799.  The actions of the police informant in the Juillet case—cultivating and leveraging a much shorter-lived friendship to induce criminal acts—are not appreciably more likely to induce a law-abiding person to engage in criminal acts than the desperate pleas of a close friend in this case.

¶ 36.    Likewise, in Weaver v. State, a Florida appeals court concluded that a jury could find that defendant was entrapped where his girlfriend, covertly serving as a police informant, leveraged the parties' relationship to induce the conduct the defendant was charged with.  370 So.2d 1189 (Fla. Dist. Ct. App. 1979).  In that case, immediately upon her release from jail the girlfriend contacted the defendant and sought to obtain heroin from him.  She contacted him with her request for heroin on three consecutive days, and on the fourth day, which was her birthday, she went to his home.  While there, after celebrating for about an hour, the girlfriend again asked for heroin as a birthday present.  The defendant delivered a small amount to her and, on that basis, was charged with possession of heroin with intent to sell or deliver.  Apparently applying a subjective test, the court reversed the defendant's conviction on the basis that the trial court erred

18

in declining an entrapment instruction. Id. at 1191. The police informant's conduct in Weaver—leveraging her relationship as the defendant's girlfriend and requesting the heroin as a birthday present—is not conduct that is appreciably more likely to induce an individual who is not otherwise inclined to commit a crime than the frantic and persistent pleas of a close friend in pain.

¶ 37. The police conduct in the case of Commonwealth v. Lucci was concededly more egregious than this case because the informant induced the defendant to return to drug use within weeks of his release from a drug rehabilitation program, but the decision does rely on the informant's appeals to friendship and sympathy as significant factors supporting the court's conclusion as a matter of law that the defendant was entrapped. 662 A.2d 1, 6-7 (Pa. Super. Ct. 1995).

¶ 38. The case of People v. Alexander is less helpful because in that case the Illinois appellate court applied a subjective test that focused on the defendant's predisposition, or lack thereof, to commit the offense. 619 N.E.2d 863, 869 (Ill. App. Ct. 1993). Nevertheless, the opinion provides some support for petitioner's case here insofar as the court concluded that the defendant was entitled to a jury instruction on entrapment based in part on the facts that the police informant who induced him to help find and buy drugs was a close friend and the informant and an undercover police officer initiated the various transactions. Id. at 870.

¶ 39. To establish prejudice to support a PCR petition based in the ineffective assistance of counsel, a petitioner must show not only that counsel's performance was deficient, but also that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In re LaBounty, 2005 VT 6, ¶ 7, 177 Vt. 635, 869 A.2d 120 (mem.) (quotation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quotation omitted). For the above reasons, based on the evidence in the summary-judgment record viewed in the light most favorable to defendant, I conclude that if defense counsel had not failed to provide timely notice of petitioner's entrapment defense, the

trial court would have been required to give the entrapment instruction. Accordingly, I would reverse the trial court's award of summary judgment to the State.

¶ 40.   I am authorized to state that Chief Justice Reiber joins this dissent.

_____
Associate Justice